**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HIGH OFF LIFE, LLC, | ) | Civil Action |
| | ) | |
| Plaintiff, | ) | No. 2:20-cv-1556-WSH |
| | ) | |
| v. | ) | Judge W. Scott Hardy |
| | ) | |
| FREEBANDZ PRODUCTIONS, LLC, and | ) | |
| SONY MUSIC HOLDINGS, INC. | ) | ***Electronically Filed*** |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF**
**DEFENDANTS FREEBANDZ PRODUCTIONS, LLC AND**
**SONY MUSIC ENTERTAINMENT TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT .........................................................................................1

FACTS ...............................................................................................................................2

    A.  Plaintiff's Trademark Registrations. ............................................................2

    B.  Future's *High Off Life* Album. ....................................................................3

    C.  High Off Life Promotional Items. ................................................................4

LEGAL ARGUMENT ........................................................................................................9

 I.  THE ALBUM'S TITLE IS PROTECTED BY THE FIRST AMENDMENT,
    WHICH BARS PLAINTIFF'S LANHAM ACT CLAIMS AS A MATTER OF LAW .........11

    A.  The Protections of the First Amendment Apply to the Album and Goods .......................13

    B.  The Title *High Off Life* Has Clear Artistic Relevance to the Content of the Album .........14

    C.  The Album and Goods Do Not
    Explicitly Mislead as to Their Source ............................................................15

CONCLUSION ....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                    <u>PAGE(s)</u>

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
   237 F.3d 198 (3d Cir. 2000)......................................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................9

*Brown v. Wetzel*,
   No. 1:18-CV-00086(Erie), 2019 WL 1331619 (W.D. Pa. Mar. 25, 2019)....................................3

*Budhun v. Reading Hosp. & Med. Ctr.*,
   765 F.3d 245 (3d Cir. 2014)......................................................................................9

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)....................................................................................10

*Clark v. United States*,
No. 13-490C, 2015 U.S. Claims LEXIS 750 (Fed. Cl. June 12, 2015) ........................................11

*Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*,
   No. CV 20-4822-PLA, 2020 WL 6875178 (C.D. Cal. Oct. 23, 2020) ......................................14

*Dillinger, LLC v. Elec. Arts Inc.*,
   No. 1:09–cv–1236 (JMS)(DKL), 2011 WL 2457678 (S.D. Ind. June 16, 2011) ......................14

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
   547 F.3d 1095 ....................................................................................14, 15, 17

*Facenda v. N.F.L. Films, Inc.*,
   542 F.3d 1007 (3d Cir. 2008)................................................................................12, 13

*Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*,
   30 F.3d 466 (3d Cir. 1994)......................................................................................11

*Flight Sys., Inc. v. Electronic. Data Sys. Corp.*,
   112 F.3d 124 (3d Cir. 1997)......................................................................................9

## TABLE OF AUTHORITIES, *Cont'd*

<u>**CASES**</u>                                                                                      <u>**PAGE(s)**</u>

*Gallagher v. Lions Gate Entm't, Inc.*,
   No. 15-cv-02739-ODW, 2015 U.S. Dist. LEXIS 122441 (C.D. Cal. Sept. 11, 2015) ..............11

*Hart v. ElectronicArts, Inc.*,
   717 F.3d 141, 150 (3d Cir. 2013) ................................................................................................12

*Hidden City Phila. v. ABC, Inc.*,
   No. CV 18-65, 2019 WL 1003637 (E.D. Pa. Mar. 1, 2019) ..........................................13, 16, 17

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
   515 U.S. 557 (1995) ...................................................................................................................13

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012)........................................................................................14

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) .....................................................................................................12

*Medina v. Dash Films, Inc.*,
   No. 15-cv-2551 (KBF), 2016 WL 3906714 (S.D.N.Y. July 14, 2016) .....................................17

*Mossack Fonseca & Co., S.A., et al. v. Netflix, Inc.*,
   Case No.: CV 19-9330-CBM-AS(x) (C.D. Cal. Dec. 23, 2020) ................................................16

*Parks v. LaFace Records*,
   329 F.3d 437 (6th Cir. 2003) .....................................................................................................12

*Radiance Found., Inc. v. NAACP*,
   786 F.3d 316 (4th Cir. 2015) .....................................................................................................12

*Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*,
   806 F. App'x 151 (3d Cir. 2020) ................................................................................................10

*Robinson v. Family Dollar Inc*,
   679 F. App'x 126 (3d Cir. 2017) ................................................................................................10

*Rogers v. Grimaldi*,
   875 F.3d 994 (2d Cir. 1989).............................................................................................12, 13, 14

## TABLE OF AUTHORITIES, *Cont'd*

**CASES**                                                                 **PAGE(s)**

*Santana v. A.L. Recovery, LLC*,
  No. CV 18-16, 2018 WL 3912830 (W.D. Pa. Aug. 16, 2018) ...................................................10

*Scott Fetzer Co. v. Gehring*,
  288 F. Supp. 2d 696 (E.D. Pa. 2003) ......................................................................................18

*Seale v. Gramercy Pictures*,
  949 F. Supp. 331 (E.D. Pa. 1996), *aff'd*, 156 F.3d 1225 (3d Cir. Pa. 1998)...........................13

*Sugar Busters LLC v. Brennan*,
  177 F.3d 258 ............................................................................................................................12

*Twentieth Century Fox TV v. Empire Distribution, Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ..........................................................................................13, 16

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989).................................................................................................................13

*Winer v. Senior Living Guide, Inc.*,
  No. CV. 12-934, 2013 WL 1217582 (W.D. Pa. Jan. 17, 2013) .................................................11

**STATUTES**

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 3, 9, 10

**WEBSITES**

https://shop.freebandz.com/collections/highofflife ...........................................................................4

https://shoplifeisahigh.com ....................................................................................................4, 5, 15

https://music.youtube.com/search?q=high+off+life .......................................................................15

https://open.spotify.com/search/high%20off%20life ....................................................................15

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Freebandz Productions, LLC ("Freebandz") and Sony Music Entertainment (incorrectly identified as Sony Music Holdings, Inc. in the Complaint) ("Sony") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiff High Off Life, LLC ("Plaintiff").

## PRELIMINARY STATEMENT

This trademark-related action concerns the artist Future's eighth studio album titled *High Off Life* (the "Album"). In the Album, Future paints a picture of optimism while rapping about wealth, deep-seated trauma, and a relationship with drugs. Plaintiff acknowledges that the original name of the Album was *Life is Good*, but a "last minute" change was made to change the title to *High Off Life* because of "concern about coronavirus-related negative press." (Comp. at ¶ 25.) As the common phrase "high off life" is synonymous with "life is good," Future chose *High Off Life* as a substitute precisely because of its artistic relevance to the expressive content of the Album. The First Amendment protects Future's decision to name the album *High Off Life* regardless of any trademarks that Plaintiff may own.

Plaintiff seeks to avoid application of the First Amendment defense by including a conclusory and empty allegation that the title *High Off Life* bears no relation to the expressive content of the Album, yet Plaintiff purposefully fails to provide the Album content to the Court so that it can assess that allegation for itself. (Compl. at ¶ 26.) Plaintiff's omission does not salvage its claim because the Court may take judicial notice of materials directly referenced in the Complaint on a motion to dismiss, which here include the lyrics and album artwork. A review of these materials establishes that the eleventh-hour decision to use the title *High Off Life* was made because the common phrase is artistically relevant to the expressive content of the Album.

The First Amendment protects the titles of creative works against overeager trademark owners seeking to have a monopoly on commonplace phrases, and this case should be dismissed accordingly.  Under the well-established *Rogers* test, which has been adopted by courts in this circuit, Plaintiff's trademark and unfair competition claims fail as a matter of law because: (i) the Album is an expressive work protected by the First Amendment; (ii) *High Off Life* has artistic relevance to the work, and (iii) Defendants have not explicitly misled anyone into thinking that Plaintiff was involved in the creation of the Album.  Plaintiff's state law claims fail for these very same reasons.

## FACTS

### A.    Plaintiff's Trademark Registrations.

Plaintiff's claims rest on the allegation that it owns three federal trademark registrations it describes as the "Family of HIGH OFF LIFE Marks."  (Compl. ¶ 19.)  The first of these registrations, Reg. No. 5,569,671, was issued by the United States Patent and Trademark Office ("USPTO") on September 25, 2018 for the word mark HIGH OFF LIFE ENTERTAINMENT in International Class 41.  Plaintiff's second and third registrations, Reg. No. 5,690,553 and Reg. No. 5,690,565, were issued on March 5, 2019 for the following design mark:



(*See* Declaration of David C. Rose, dated January 4, 2021 and filed concurrently herewith at Ex. A.)  Specifically, the design mark registrations protect a mark that "consists of the words 'HIGH OFF LIFE' together in stylized font with an ankh beginning above the letters falling between the

letters 'L' and 'I'.  The ankh drips onto the letter "F" and beneath the letters 'L' and 'I'" in International Classes 25 and 35.  (*Id.*)

      **B**.     **Future's *High Off Life* Album**.

      On May 15, 2020, Defendants released a hip-hop album by the artist Future titled *High Off Life*.  As Plaintiff acknowledged, the Album was originally slated to be called *Life is Good*, after the hit single of the same name that Future and the recording artist Drake released earlier in the year on January 10, 2020.  (Compl. ¶ 25.)  At the last minute, out of concern that releasing an album titled *Life is Good* in the midst of a global health crisis would attract negative press coverage, the Album was renamed *High Off Life*.  (*Id.*)  The Album has twenty-one tracks and includes songs that were previously released as singles, such as *Life is Good* and *Life is Good Remix*.  A copy of the Album's official track list, displayed on the back cover of the physical Album, is shown below.[1]

*High Off Life* Track List



---

[1] In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Brown v. Wetzel*, No. 1:18-CV-00086(Erie), 2019 WL 1331619, at *2 (W.D. Pa. Mar. 25, 2019) (citation omitted).  Plaintiff expressly referenced the Album's content by alleging that the title "bears no relation to the expressive content of the album." (Compl. ¶ 26.)

The Album also included front cover art: a black-and-white candid photograph of Future with his arms outstretched and blurred, as if in movement, and two blurred and unidentifiable people in the background.  Apart from the standard black-and-white "Parental Advisory" label for explicit lyrics, the front cover does not contain any text.  A copy of the Album's front cover is shown below.

*High Off Life* Front Album Cover



### C.     *High Off Life* **Promotional Items.**

To help promote the Album, Freebandz created a collection of apparel and accessories that were sold on Freebandz's official website (https://shop.freebandz.com/collections/highofflife) and a separate, standalone website called https://shoplifeisahigh.com/ (collectively, the "Goods"). (Compl. ¶ 27.)  Plaintiff provided examples of these items from both websites in its Complaint. (*Id.*)  Of those examples, below are screenshots of how they were actually identified online and sold on Freebandz's website.

No. 2:20-cv-1556-WSH





Trillionaire Tee

Regular price $35

SOLITAIRE DIAMONDS TEE

$27





HIGH OFF LIFE TOTE BAG

$23

High Off Life Tee

Regular price $35

The remaining examples Plaintiff includes in the Complaint were sold on http://shoplifeisahigh.com. Images of both the front and back of these items, as they were listed on the website, are below.





HOL2104 - GIVE THANKS
HOODIE (BLUE)
*from* $129

HOL2104 - GIVE THANKS
HOODIE (BLUE)
*from* $129





HOL2204 - GIVE THANKS
SWEATPANTS (BLUE)
*from* $98

HOL2204 - GIVE THANKS
SWEATPANTS (BLUE)
*from* $98

No. 2:20-cv-1556-WSH





Some of these items were also advertised on Defendant Freebandz's Instagram account, @shopfbg (*Id.* ¶ 29), which uses one of Freebandz's logos as its profile picture (the "FBG logo"). An enlarged version of @shopfbg's profile picture is provided below.

Many of the clothing items included in Paragraph 27 of the Complaint have labels that bear the FBG logo. For example, the "GIVE THANKS SWEATPANTS" that are included in the Complaint has this label:



Other clothing depicted in Paragraph 27 of the Complaint features another FREEBANDZ mark on the label, as shown in the "SOLITAIRES DIAMOND TEE":



## **LEGAL ARGUMENT**

"To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must accept a pleading's factual allegations as true but are not bound to accept as true the pleading's legal conclusions. *Id.* at 678. While ordinarily a party may not raise affirmative defenses at the motion to dismiss stage, it may do so if the defense is apparent on the face of the complaint. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014); *see Flight Sys., Inc. v. Electronic. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997) (affirmative defenses may be considered in a motion to dismiss under Rule 12(b)(6) where the defense would "present an insuperable barrier to recovery by the plaintiff").

In particular, to survive a Rule 12(b)(6) motion, a complaint must articulate sufficient plausible factual allegations to raise a right to relief beyond a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court clarified this standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> As the Court held in Twombly, … *the pleading standard* Rule 8 announces does not require "detailed factual allegations," but it *demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. .. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do.*" … Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557…. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." …. A claim has *facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable* for the misconduct alleged…. *The plausibility standard* is not akin to a "probability requirement," but it *asks for more than a sheer possibility that a defendant has acted unlawfully…. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.*'"

556 U.S. at 678 (internal citations omitted; emphasis supplied).

The Complaint fails to meet this basic standard for several reasons. First, it is replete with threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *See Robert W. Mauthe M.D., P.C. v. Spreemo, Inc*., 806 F. App'x 151, 152 (3d Cir. 2020) ("In determining whether a plaintiff has stated a claim under Rule 12(b)(6), 'we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. However, we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'") (citation omitted); *Robinson v. Family Dollar Inc*, 679 F. App'x 126, 131 (3d Cir. 2017) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The Complaint ultimately alleges little more than that (i) Plaintiff uses HIGH OFF LIFE "in relation to clothing, hip-hop music, events promotion, and branding and advertising" (Compl. at ¶ 22), (ii) it owns trademark registrations (*id.* at ¶¶ 19-21), (iii) the Album uses the same term as its title (*id.* at ¶ 24), and (iv) Defendants used that title in disregard of Plaintiff's rights (*id.* at 24). However, as discussed more fully below, because the Album and its title are protected artistic expression, none of these statements offers the plausible factual allegations required for a legally sufficient, cognizable trademark infringement claim.

Second, the Complaint's allegations are belied by the Album, its expressive content and the cover artwork, which are integral to the Complaint and may therefore be reviewed by the Court on this Motion. *See Santana v. A.L. Recovery, LLC*, No. CV 18-16, 2018 WL 3912830, at *4 (W.D. Pa. Aug. 16, 2018) (citing *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997)). A document is integral to the complaint if the plaintiff relied upon that document in framing the complaint or if the mere existence of the document gives rise to the legal rights asserted. *Id.* Where, as here, the content of the work at issue is at odds with Plaintiff's allegations

purporting to describe that work, the work trumps Plaintiff's descriptions and may be assessed by the Court.  *See Clark v. United States*, No. 13-490C, 2015 U.S. Claims LEXIS 750, at *16 (Fed. Cl. June 12, 2015) (conclusory allegations that work was copied are contradicted by work itself); *see, e.g., Gallagher v. Lions Gate Entm't, Inc.*, No. 15-cv-02739-ODW, 2015 U.S. Dist. LEXIS 122441, at *13-46 (C.D. Cal. Sept. 11, 2015) (disregarding allegations in copyright infringement complaint contradicted by the works at issue).

As described below, the choice of *High Off Life* as the Album title directly correlates to the expressive content of the Album itself and is therefore protected by the First Amendment. Moreover, Defendants have not misled consumers into thinking that Plaintiff created or sponsored the Album or the Goods.  Accordingly, the Court should dismiss the Complaint because it fails to state a claim upon which relief can be granted.

## I.    THE ALBUM'S TITLE IS PROTECTED BY THE FIRST AMENDMENT, WHICH BARS PLAINTIFF'S LANHAM ACT CLAIMS AS A MATTER OF LAW

To sufficiently allege a federal trademark infringement, unfair competition or common law trademark infringement claim in the Third Circuit, a plaintiff must allege: "(1) the mark is owned by the plaintiff; (2) the mark is valid and legally protectable; and (3) the defendant's use of the mark to identify goods and services is likely to create confusion concerning the origin of the goods or services."  *Fisons Horticulture, Inc. v. Vigoro Industries, Inc*., 30 F.3d 466, 472 (3d Cir. 1994). The elements of the federal and state claims are identical except that the Lanham Act claim requires that the defendant has used the mark in interstate commerce.  *See Winer v. Senior Living Guide, Inc.*, No. CV. 12-934, 2013 WL 1217582, at *10 (W.D. Pa. Jan. 17, 2013) (dismissing the trademark infringement claim under Pennsylvania common law because the claim follows the Lanham Act analysis and the "sole distinction is that the state law claim does not require an effect on interstate commerce") (citation omitted).  Plaintiff's claims that Defendants infringed on its trademarks by naming the Album *High Off Life* and offering for sale Goods that display the text

"High Off Life" fail as a matter of law under First Amendment principles.

The conflict between the Lanham Act claims and the First Amendment's protection for artistic expression was addressed in the seminal case of *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), which concerned director Federico Fellini's film, *Ginger and Fred*. *Id.* at 996–97. The film was not about the iconic film stars Ginger Rogers and Fred Astaire, but about two fictional Italian cabaret performers who had earned their livings by imitating Rogers and Astaire. Rogers alleged that the use of her name in the film's title violated Section 43(a) of the Lanham Act. *Id.* at 996-97.

The Second Circuit held that the First Amendment precludes Lanham Act claims premised upon the title of an expressive work unless that title "has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads the consumer as to the source or content of the work." *Id.* at 999. Finding the title *Ginger and Fred* artistically relevant to the film's fictional content and not explicitly misleading as to its source, the court affirmed the dismissal of Roger's Lanham Act claim as a matter of law. *Id.* at 1000-05. The two-prong *Roger's* test – *i.e.*, (i) whether a work's title has some artistic relevance to its content and (ii) whether it *explicitly* misleads – has been widely adopted and has been extended to the use of both names and trademarks in the *content* of expressive works, as well as in their *title*, leading to such claims regularly being dismissed as a matter of law. *See, e.g.*, *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 328-29 (4th Cir. 2015) (applying *Rogers* to the title of online article); *Parks v. LaFace Records*, 329 F.3d 437, 461 (6th Cir. 2003) (applying *Rogers* to the title of a song); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 & n. 7 (5th Cir.1999) (applying *Rogers* to a book title); *Mattel, Inc. v. MCA Records, Inc*., 296 F.3d 894, 902 (9th Cir. 2002) (applying *Rogers* to the title of a song). Although the Third Circuit has yet to explicitly adopt the *Rogers* test in distinguishable cases unrelated to titles of creative works (*see Hart v. ElectronicArts, Inc.*, 717 F.3d 141, 150 (3d Cir. 2013) (declining to apply *Rogers* to "general contents of a work") and *Facenda v. N.F.L. Films, Inc*., 542 F.3d 1007, 1016 (3d Cir. 2008) (declining to apply *Rogers* to

use of a narrator's voice in a television production)), it has been adopted in this Circuit by the Eastern District of Pennsylvania (*see Hidden City Phila. v. ABC, Inc.,* No. CV 18-65, 2019 WL 1003637 (E.D. Pa. Mar. 1, 2019) (dismissing the plaintiff's trademark infringement and dilution claims because ABC's use of the mark was protected by the First Amendment under the *Rogers* test) and *Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa. 1996), *aff'd*, 156 F.3d 1225 (3d Cir. Pa. 1998) (applying the *Rogers* test in determining whether the defendant's use of the plaintiff's name and likeness in connection with a movie dramatizing historical events and musical CD infringed on the plaintiff's right of publicity)).  Moreover, the Third Circuit in *Facenda* did opine that application of the *Rogers* test would be appropriate in cases involving "titles" of works of artistic expression.  542 F.3d at 1016, 1018.  Since this case involves a title of a work of artistic expression and related goods, applying the *Rogers* test to Plaintiff's claims is appropriate and consistent with the jurisprudence of this Circuit.

A.  <u>The Protections of the First Amendment Apply to the Album and Goods</u>.

Songs and musical albums are indisputably protected by the First Amendment as works of artistic expression and therefore fall under the ambit of the *Rogers* case.  *Rogers*, 875 F.2d at 997; *see Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,* 515 U.S. 557, 569 (1995) (stating that paintings, music and poetry are "unquestionably shielded" by the First Amendment); *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989) ("Music, as a form of expression and communication, is protected under the First Amendment.").  By extension, goods that bear an album title, and that were created and marketed specifically to promote an album, should be included in a court's assessment of whether the underlying artistic expression is protected by *Rogers.  See Twentieth Century Fox TV v. Empire Distribution, Inc*., 875 F.3d 1192, 1196-1197 (9th Cir. 2017) ("Although it is true that these promotional efforts technically fall outside the title or body of an expressive work, it requires only a minor logical extension of the reasoning of *Rogers* to hold that works protected under its test may be advertised and marketed by name, and we so hold."); *see also Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.,* No. CV

20-4822-PLA, 2020 WL 6875178, at *4 n.4 (C.D. Cal. Oct. 23, 2020) (suggesting that a jacket bearing the title of a film that allegedly infringed the plaintiff's mark could have been dismissed at the pleading stage had the plaintiff alleged that the jacket was created to promote the film). Under these standards, the Album and Goods are protected by the First Amendment making the *Rogers* test applicable to the case at hand.

### B.  The Title *High Off Life* Has Clear Artistic Relevance to the Content of the Album

The *Rogers* court emphasized that the first element of its analysis reflects an "appropriately low threshold of minimal artistic relevance" in light of First Amendment considerations.  *Rogers*, 875 F.2d at 999.  *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (quoting *Rogers* and stating "[t]he threshold for 'artistic relevance' is purposely low and will be satisfied unless the use 'has *no* artistic relevance to the underlying work *whatsoever.*'"); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,* 547 F.3d 1095, 1100 (9thCir. 2008) ("[T]he level of relevance merely must be above zero" to "merit First Amendment protection.").  "[I]t is not the role of the Court to determine how meaningful the relationship between a trademark and the content of a literary work must be; consistent with *Rogers*, any connection whatsoever is enough..."  *Dillinger, LLC v. Elec. Arts Inc.*, No. 1:09–cv–1236 (JMS)(DKL), 2011 WL 2457678, at *6 (S.D. Ind. June 16, 2011) (finding the name "Dillinger" in reference to a Tommy Gun had an above-zero relevance to a video game that enabled players to act like mafia members).

The title *High Off Life* – for a collection of songs about life and its joys – meets the low threshold for artistic relevance.   The Album is a product of Future reflecting on his life and recognizing his good fortune, which is apparent from just the Album's song titles alone: *Touch the Sky*, *Hard to Choose One*, *Trillionaire*, *Too Comfortable*, *Accepting My Flaws*, and *Life is Good*, which all conjure feelings of optimism, abundance, comfort, happiness, and self-love.  Initially, the hit single *Life is Good* was meant to be the Album's namesake.  (Compl. ¶ 25.)  However, by the time the Album was scheduled to debut, the world was experiencing the throes of the COVID-

19 pandemic; an album titled *Life is Good* would not have been well-received.  (*Id.*)  In an attempt to avoid this potential misstep, Defendants renamed the Album *High Off Life*, a nod to Future's numerous references to drug use (*see e.g.*, *Trapped in the Sun*, *Pray for a Key*, *Hard to Choose*) that still evokes a sense of gratitude for life.  "High Off Life" was not "arbitrarily chosen" as the Album's title.  It was chosen because — as the titles of the Album's tracks demonstrate — it was representative of the Album's theme and more sensitive to the contemporaneous realities faced by its potential listeners than "Life is Good."

The Album's focus on spreading a message of positivity is also evident from the Goods that Freebandz created to help promote the Album.  The items offered for sale on http://shoplifeisahigh.com bear phrases and symbols synonymous with the common positive phrases "Life is Good" and "High Off Life."  For instance, the clothing examples Plaintiff chose to include in its Complaint are covered with images of smiley faces.  The sweatshirt and t-shirt have "GIVE THANKS" printed on the front of the items, and "GIVE THANKS" appears on the back of the sweatpants.  These designs were not chosen by chance.  They were intentionally chosen because they conformed to the Album's expressive theme and were designed to market and promote the Album.

It is beyond dispute that the Album's title, a common phrase used to describe being happy with life (something that is also true of the Album's original title), has the requisite level of artistic relevance to its content. [2]  Similarly, the designs of the Goods, together with the phrase "High Off Life," convey a message that also has the requisite level of artistic relevance.

### C.    The Album and Goods Do Not Explicitly Mislead as to Their Source.

Like the "relevance" prong of the *Rogers* test, the "explicitly misleading" prong preserves the First Amendment protections except in extraordinary cases.  *See E.S.S. Entm't 2000, Inc.,* 547

---

[2] "High off life" is a commonly used phrase in general and in the music industry in particular. Searches for "high off life" on music streaming services will return dozens of albums and songs titled "High Off Life."  (*e.g.*, https://music.youtube.com/search?q=high+off+life; https://open.spotify.com/search/high%20off%20life).

F.3d at 1099-1001 (noting that "the mere use of a trademark alone cannot suffice to make such use explicitly misleading") (citation omitted); *Mossack Fonseca & Co., S.A., et al. v. Netflix, Inc.*, Case No.: CV 19-9330-CBM-AS(x) (C.D. Cal. Dec. 23, 2020) (finding that the mere use of a trademark in an expressive work does not make such use explicitly misleading where the use is only one component of the defendant's larger expressive work).  Under this prong, a work's title is not "'explicitly misleading' absent an 'explicit indication,' 'overt claim,' or 'explicit statement' that causes consumer confusion." *Hidden City*, 2019 WL 1003637, at *4 (quoting *Twentieth Century Fox Television*, 875 F.3d at 1199).  Plaintiff does not allege, nor can it, that the Album makes any explicit representation that it originates with or was endorsed by Plaintiff.

There is nothing in the Album's title from which one could plausibly draw the conclusion that Defendants are "explicitly misleading" consumers about the source of the Album.  Indeed, Future's name and likeness, as well as the track list, are prominently featured on the physical Album packaging, which associates the Album with Future, not Plaintiff.  He is the only person on the Album cover that is recognizable, and the front cover does not contain any text apart from the parental advisory label.  On the back cover, Future is the only person pictured on the Album's track list, and his name prominently appears at the top of the image, right above "High Off Life.".  Defendants' FREEBANDZ and EPIC logos can be found beneath the track list.[3]  If anything, the artwork of the Album cover depicting Future and the FREEBANDZ and EPIC logos, and the track list on the back, demonstrate Defendants' desire for the Album to not be affiliated with anyone besides Defendants and Future.

This desire is also evident from the Goods sold to promote the Album.  The "Trillionaire Tee," a grey t-shirt that has "HIGH OFF LIFE" in cream text over three-dollar signs in purple, green and teal and "Trillionaire" written across the sides of the design, is a clear reference to the song on the Album titled *Trillionaire*.  The "Solitaire Diamonds Tee," a black t-shirt featuring a

---

[3] Epic Records is a Sony record label.

dazzling diamond superimposed onto a sunflower and "high off Life" [sic] in white, stylized text, is a reference to the first lines of the song *Solitaires*.  The "High Off Life Tee" features the Album's front cover art along with "HIGH OFF LIFE" in purple text, an unmistakable reference to the Album.  Moreover, many of the items of clothing depicted in the Complaint have inside labels that bear the same FREEBANDZ logo as depicted on the Album cover or other recognizable Freebandz logos as shown above.  This merchandize was all sold on Freebandz's websites, bearing the domain names Freebandz and "Shop Life is a High" and expressly referencing the Album that Freebandz produced.  None of the Goods contain any type of statement or symbol, (for example, the ankh in Plaintiff's trademark registration), that could be interpreted as a reference to Plaintiff.

When measured against the "explicitly misleading" standard, it is not just implausible, but inconceivable, that the use of "High Off Life" as the title of the Album or on the Goods – with repeated uses of the FREEBANDZ logo on the Album artwork and on clothing labels – could "dup[e] consumers into buying a product they mistakenly believe is sponsored by the trademark owner."' *E.S.S. Entm't* 2000, 547 F.3d at 1100 (citation omitted).  Here, neither the Album's title nor the Goods can be misleading if the Complaint does not contain allegations to suggest that Defendants made misleading statements and the work and clothing inform the consumer who actually produced it.  *See Medina v. Dash Films, Inc*., No. 15-cv-2551 (KBF), 2016 WL 3906714, at *5 (S.D.N.Y. July 14, 2016) (holding the title of short films was not explicitly misleading where the complaint did not include allegations that defendants suggested plaintiff was affiliated with the work and "to the contrary, materials promoting the [videos] prominently informed the reader" who produced the work); *Hidden City*, 2019 WL 1003637, at *5 (E.D. Pa. Mar. 1, 2019) (finding that video did not explicitly mislead in part because it appeared on the defendant's website and featured the defendant's logo).

Because the phrase "High Off Life" is artistically relevant to the Album, and the Album and the Goods promoting the Album do not explicitly mislead consumers as to the source or content of the work or the merchandise, Plaintiff's federal and state law trademark infringement

and unfair competition claims are barred by the First Amendment under the *Rogers* test and fail as a matter of law.[4]

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court enter an Order dismissing Plaintiff's Complaint in its entirety, with prejudice, and provide such other and further relief as the Court deems just and proper, including without limitation, attorneys' fees and costs.

Respectfully submitted,
**THE WEBB LAW FIRM**

Dated: January 4, 2021

s/*Cecilia R. Dickson*
Cecilia R. Dickson (PA ID No. 89348)
Kent E. Baldauf, Jr. (PA ID No. 70793)
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
cdickson@webblaw.com
kbaldaufjr@webblaw.com

David C. Rose (admitted *pro hac vice*)
Dyan Finguerra-DuCharme (admitted *pro hac vice*)
Pryor Cashman LLP
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
drose@pryorcashman.com
dfinguerra-ducharme@pryorcashman.com

*Attorneys for Defendants Freebandz Productions, LLC and Sony Music Entertainment*

---

[4] The Plaintiff's federal and state unfair competition claims are premised on the same facts as the Plaintiff's trademark infringement claims. (Compl. ¶¶ 37-52.) The elements of a federal unfair competition claim and a Pennsylvania unfair competition claim are the same, except that the federal claim requires an effect on interstate commerce. *See Scott Fetzer Co. v. Gehring*, 288 F. Supp. 2d 696, 703 (E.D. Pa. 2003). The Third Circuit has also established that federal trademark infringement claims and federal unfair competition claims are measured by identical standards. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

No. 2:20-cv-1556-WSH

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of January, 2021, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS FREEBANDZ PRODUCTIONS, LLC AND SONY MUSIC ENTERTAINMENT TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.


**THE WEBB LAW FIRM**


<u>s/ *Cecilia R. Dickson*         </u>
Cecilia R. Dickson