UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| HIGH OFF LIFE, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>FREEBANDZ PRODUCTIONS, LLC, and SONY MUSIC HOLDINGS, INC,<br><br>               Defendants. | Civil Action No. 2:20-cv-1556-WSH<br><br>Hon. W. Scott Hardy<br><br><br>**_Electronically Filed_** |

### PLAINTIFF HIGH OFF LIFE, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

Plaintiff High Off Life, LLC ("HOL") opposes the motion by Defendants Freebandz Production, LLC ("Freebandz") and Sony Music Entertainment ("Sony") (together, "Defendants") to dismiss HOL's complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### Introduction

Defendants' motion strays far beyond the bounds of a motion to dismiss—arguing new facts and seeking to contradict the factual allegations pled by HOL in its complaint. Another court in this District recently held "a motion to dismiss is not the appropriate stage in the litigation at which to resolve these arguments" on whether the First Amendment shielded content from a Lanham Act claim. *Cornette v. Graver*, No. 3:19-cv-219, at *15 (W.D. Pa. Apr. 2, 2020). Defendants' arguments require determinations of fact and weighing of the new allegations Defendants raise in their briefing. That is reason enough to deny their motion as premature.

1

If the Court reaches the merits and applies the *Rogers* test, the motion should still be denied. The Third Circuit held in *Facenda* that the *Rogers* test should be applied narrowly only to titles of expressive works. Defendants' "High Off Life" branded goods (the "Goods") are not expressive works and are not protected by the First Amendment under Third Circuit precedent in *Facenda*. Defendants ignore *Facenda* and rely on the Ninth Circuit's *Empire* decision, which is inapplicable and not controlling law. But even *Empire* did not go as far as Defendants would have the Court go here. The *Rogers* test cannot be applied to the infringing Goods which are not simply cheap album-related swag; instead, they are an integral part of Freebandz' streetwear clothing line, separate and apart from the Album, which includes items like sweatshirts selling for $130 each. Defendants also introduce new factual allegations regarding the clothing labeling and appearance to argue there is no likelihood of confusion. That analysis is far outside the scope of a motion to dismiss and should not be considered.

The "High Off Life" album (the "Album") is also exempt from the *Rogers* test for two reasons: (1) its title is confusingly similar to the "High Off Life" titles used by HOL for its identical hip-hop music events, hip-hop music streaming shows, and hip-hop music production services; and (2) Defendants admit they have not used the phrase "High Off Life" to either refer to plaintiff HOL or signify the same meaning of the phrase that is associated with HOL's use of its marks—enjoyment of life *without* drugs. While the First Amendment allows a third party to use a trademark for purposes of commenting on or critiquing the mark, it does not freely allow use of another's mark for any purpose unrelated to the mark itself, particularly if that use is likely to mislead consumers.

Even if *Rogers* did apply, Defendants cannot meet their burden of proof. A reasonable person could find either that the title lacks a clear relationship to the Album's content or that Defendants' use of HOL's marks is explicitly misleading. While Plaintiff HOL uses its "High Off Life" marks to identify the positive, conscious feeling of enjoying life without drugs, the drug-fueled content of the Album is antithetical to the

meaning associated with HOL's marks. Further, Defendants use nearly identical marks to HOL's on identical products, creating the likelihood consumers will be misled. Thus, neither the Goods nor Album are subject to a valid First Amendment defense and the Court should deny Defendants' motion in full. At minimum, the Court should grant leave to amend to add supporting facts rather than dismissal with prejudice.

I.   **Motion to Dismiss Standard Requires Accepting Facts Pled by HOL and Does Not Permit Consideration of Allegations Raised by Defendants in Briefing**

Under Third Circuit law, the Court conducts a two-part inquiry on a motion to dismiss: (1) "the factual and legal elements of a claim should be separated [and] [t]he district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions"; and (2) the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). "[N]othing in *Twombly*, *Iqbal*, or *Fowler* has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review." *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 603 (E.D. Pa. 2010) (citing *Arner v. PGT Trucking, Inc.*, No. CIV.A.09-565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010)).

> Federal Rule of Civil Procedure 8 still requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Fed. R. Civ. P. 8; *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinkerton v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002).

*Brown*, 745 F. Supp. 2d at 603-04.

Further, the Court "may not, in considering a motion to dismiss under Rule 12(b)(6), take cognizance of the factual allegations in the moving party's motion or memorandum of law." *Qwest Comms. Intern. v. Cyber-Quest, Inc.*, 124 F. Supp. 2d 297, 303 (M.D. Pa. 2000). "[A]ny argument for dismissal founded on the assertion [raised in

briefing] is misplaced." *Id*. (citing *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.")). The Court therefore must disregard the factual allegations offered by Defendants in their motion briefing.

## II.   Determination on First Amendment Defense is Premature

Defendants' arguments are fact-based and not properly raised on a motion to dismiss. In *Cornette*, the court in this District denied as "premature" the defendant's motion to dismiss on grounds "the First Amendment protects the expression the [accused infringing shirts] embody and shields it from liability under the Lanham Act." No. 3:19-cv-219, at *15. "Whether a violation of the Lanham Act has occurred is a question that is 'predominantly factual in nature.'" *Id*. (quoting *Facenda v. NFL Films, Inc*., 542 F.3d 1007, 1024 (3d Cir. 2008)). The *Cornette* court found there was an insufficient factual record to determine whether the defendant's clothing constituted protected parodies under the First Amendment and held a "motion to dismiss is not the appropriate stage in the litigation at which to resolve these arguments." *Id*.

Here, to grant Defendants' motion, the Court would need to rule on whether the Album title is clearly related to the Album's content and whether Defendants' use of HOL's marks on the Album and Goods is explicitly misleading. *See, e.g., Seale v. Gramercy Pictures*, 949 F. Supp. 331, 337 (E.D. Pa. 1996). In support of their arguments on this point, Defendants seek to introduce numerous new factual allegations, including:

- Future himself allegedly chose "High Off Life" as the replacement title for the Album. [Dkt. 20 at 1]
- "High off life" is viewed (by some unspecified person) as "synonymous with 'life is good' . . . ." [*Id*.]
- The Album is "a collection of songs about life and its joys . . . ." [*Id*. at 14]
- The Album is "a product of Future reflecting on his life and recognizing his

good fortune . . . ." [*Id*.]

- The Album "conjure[s] feelings of optimism, abundance, comfort, happiness, and self-love." [*Id*.]

- "'High Off Life' was not 'arbitrarily chosen' as the Album's title." [*Id*. at 15]

- The Album's focus is "spreading a message of positivity . . . ." [*Id*.]

- The Goods bear internal labeling relating to Freebandz. [*Id*. at 7-8]

As noted above, the Court cannot properly consider any of these new factual allegations in deciding Defendants' motion. *See Qwest*, 124 F. Supp. 2d at 304. Rather, Defendants' attempt to introduce this new information highlights that this is not the appropriate stage to resolve the First Amendment defense on which the motion hinges. To rule for Defendants, the Court would necessarily have to find their new allegations are true, despite their contradicting the facts pled in HOL's complaint and the actual lyrics of the Album (as shown below). Such weighing of facts at this stage is improper. Defendants have not cited any opinion from this District or the Third Circuit in which a similar case was decided on a Rule 12(b)(6) motion. Rather, the most relevant cases were decided on summary judgment or at trial.[1] Here, as in *Cornette*, the record should first be developed factually before the requested determination is made. Defendants' motion should thus be dismissed as premature.

---

[1]  The court in *Hidden City Phila. v. ABC, Inc*., No. CV 18-65 (E.D. Pa. Mar. 1, 2019), dismissed plaintiff's trademark infringement claim on a Rule 12(b)(6) motion due to the plaintiff's failure to register its trademark prior to filing suit. *Id*. at *4. In dicta, the court found the First Amendment also barred the claim, as the defendant's title "Hidden Philadelphia" was "clearly artistically relevant" to a television show about secret, hidden features of Philadelphia. *Id*. at *7-8. As explained below, here there is a far more significant likelihood of consumer confusion with between the parties' identical goods and services in the same hip-hop music industry targeting the same consumers, and the Album title and its content have no connection like the clear relationship between title and content found in *Hidden City*.

III.   **Under Binding Third Circuit Law, the *Rogers* Test Does Not Apply to "High Off Life" Branded Goods**

The Third Circuit opinion in *Facenda* requires that the Court deny Defendants' motion to dismiss as to the infringement claims concerning the "High Off Life" branded Goods. Further, the new factual allegations by Defendants in their briefing regarding the Goods' internal labeling cannot be considered, and the likelihood of confusion analysis argued by Defendants is far outside the scope of a motion to dismiss.

A.   ***Facenda* Bars Application of *Rogers* Test to the Infringing Goods Because the Goods are Commercial Speech**

As pled by HOL, the infringing "High Off Life" branded Goods being sold by Defendants consist of apparel and merchandise such as tote bags. [Dkt. 1 ¶¶ 27-29] Under binding Third Circuit precedent, the *Rogers* test for a First Amendment defense would only apply if the Goods were deemed "works of artistic expression." *Facenda*, 542 F.3d at 1016. Defendants' Goods clearly do not meet that standard.

In *Facenda*, the Third Circuit held that even a creative work containing some expression—a film about the making of the *Madden NFL 06* video game—was commercial speech to which the *Rogers* test should not be applied. *Id*. at 1017-18. The Third Circuit explained that "[u]nlike the film title in *Rogers*, the books in *Cliffs Notes*, or the painting in *ETW*, the work accused of trademark infringement in our case aims to promote another creative work, the video game." *Id*. at 1018. Thus, "[e]ven if *Rogers* should apply beyond titles (an extension undertaken, to our knowledge, in only the two cases mentioned above), we decline to apply it here in a context with that additional degree of separation." *Id*. The Third Circuit therefore found "[b]ecause we hold that 'The Making of Madden NFL 06' is commercial speech rather than artistic expression, we need not reach the issue whether our Court will adopt the *Rogers* test." *Id*.; *see also Seale*, 949 F. Supp. at 340 (holding no First Amendment defense to Lanham Act claim if defendants' use of likeness of Bobby Seale was "a disguised advertisement for the sale of the CD/cassette"). Following *Facenda*, the Eastern District of Pennsylvania denied a

motion to dismiss where the plaintiffs "have pled that Defendants' speech is commercial, it does fall under the Lanham Act [and] [c]onsequently, Defendants' First Amendment arguments must fail." *Valley Forge Military Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 455 (E.D. Pa. 2014). "The alleged appropriation of Plaintiffs' marks for commercial purposes is not protected by the First Amendment." *Id*. (citing *Facenda*, 542 F.3d at 1018).

Defendants here explicitly state that the Goods "were created and marketed specifically to promote" the Album. [Dkt. 20 at 13, 21 ("Goods sold to promote the Album.")] Thus, this situation is the same as *Facenda*. Clothing and tote bags are not expressive works. And Defendants themselves claim the Goods, like the *Madden* film, "aim[ed] to promote another creative work"—the Album. *Facenda*, 542 F.3d at 1018. Under Defendants' own factual allegations, the Goods therefore constitute commercial speech. *See id*. They are allegedly an advertisement for another product, and Defendants have a promotion-based economic incentive to use the "High Off Life" mark. [Dkt. 20 at 13]; *Facenda*, 542 F.3d at 1017-18. There is thus the same "additional degree of separation" between any artistic expression in the Album and the commercial speech of the Goods as was present in *Facenda*. *Id*. at 1018. As a result, binding precedent prohibits applying the *Rogers* test to Defendants' Goods, and the motion to dismiss the Goods-related infringement claims should be denied. *Id*.

### B.    Ninth Circuit *Empire* Case Directly Conflicts With *Facenda* Precedent

Defendants ignore *Facenda* and contend the Court should do the same, instead citing *Twentieth Century Fox Television v. Empire Distribution, Inc*., 875 F.3d 1192 (9th Cir. 2017), and a California district court opinion which relied on *Empire* for its holding. However, *Empire* held that activities aimed at promoting a television show, including advertising and the sale and licensing of consumer goods, were subject to the *Rogers* test

under an "extension of the reasoning of *Rogers*." *Id*. at 1196-97.[2] That holding is directly contrary to *Facenda*, which held *Rogers* applies more narrowly and does *not* apply to material that merely advertises or promotes another expressive work. *Facenda*, 542 F.3d at 1017-18. Because this Court is bound to follow *Facenda*, it should reject Defendants' attempt to override Third Circuit precedent.

In addition, the facts pled by HOL in the complaint support that the "High Off Life" Goods are not just cheap promotional items but rather are Freebandz' separate line of streetwear apparel. [Dkt. 1 ¶¶ 27-29] While one t-shirt depicted in the complaint does show the Album cover, all of the other apparel and merchandise use the "High Off Life" mark completely independently of the Album's appearance and content. [*See id*.] Further, Freebandz was selling these apparel items for significant sums—approximately $100 for a pair of sweatpants, and $130 for a sweatshirt, for example. [Dkt. 20 at 6] Defendants even created a separate website, www.shoplifeisahigh.com, to display and sell the Goods. [Dkt. 1 ¶ 27] Thus, unlike in *Empire* and *Deus ex Machina*, the infringing apparel here is not inexpensive promotional swag. Rather, the Goods are clearly intended to stand alone as an apparel collection offered by Future. And by pleading facts showing the Goods bear "High Off Life" marks that are nearly identical to HOL's registered trademarks on the exact same goods, HOL has pled valid infringement claims.

**C.    Even if *Rogers* Test Did Apply to the Infringing Goods, Defendants' Motion Fails**

Should the Court decide to apply the *Rogers* test to the Goods despite *Facenda*, Defendants' motion still must be denied. As described in more detail below, a reasonable person could find the mark "High Off Life" bears no clear relation to the Album content.

---

[2] The other California case cited by Defendants, *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*, No. CV-20-4822, 2020 WL 6875178 (C.D. Cal. Oct. 23, 2020), expressly relied on *Empire* to support applying the *Rogers* test to a jacket sold by defendants to promote a movie, which bore a phrase similar to the plaintiff's mark. *Id*. at *4. That case provides nothing new and also directly conflicts with *Facenda*.

Additionally, the Goods must fail prong one of the *Rogers* test since the Goods (e.g., the sweatpants) are commercial products and not expressive content.

The second prong of *Rogers* looks at whether the use of the mark "was explicitly misleading as to source or content." *Seale*, 949 F. Supp. at 339. Defendants' use of the identical phrase in HOL's trademarks on the exact same types of goods sold by HOL is explicitly misleading as to the source of the Goods. Defendants' only counter is to attempt to introduce new facts in their briefing regarding labeling of the Goods. [Dkt. 20 at 7-8, 22] Those newly raised allegations must be disregarded at this stage. *See Qwest*, 124 F. Supp. 2d at 304. A determination of *Rogers*' second prong clearly requires weighing of facts regarding whether Defendants' use of HOL's marks on identical goods is explicitly misleading to consumers. Thus, a ruling on that prong is inappropriate for resolution on a motion to dismiss. *See Cornette*, No. 3:19-cv-219, at *15.

## D. Likelihood of Confusion Cannot Be Determined At This Stage

Many of the new factual allegations raised by Defendants in their briefing appear directed towards contending there is no likelihood of confusion between HOL's registered trademarks and Defendants' Goods. [*See* Dkt. 20 at 7-8, 21-22] However, "[u]ltimately, likelihood of confusion is, at its core, a question of fact." *Brown*, 745 F. Supp. 2d at 617 (quoting *AH Sportswear v. Victoria's Secret Stores*, 237 F.3d 198, 237 (3d Cir. 2000)). "As such, a motion to dismiss on this issue will only be granted if the defendant can establish that no reasonable factfinder could find a likelihood of confusion on any set of facts that plaintiff could prove." *Brown*, 745 F. Supp. 2d at 617.

Defendants cannot meet that burden of proof. First, their new allegations regarding internal labeling of the "High Off Life" branded Goods are extraneous to the Complaint and cannot be considered. *See Qwest*, 124 F. Supp. 2d at 304. Second, the Third Circuit has recognized that trademark infringement liability under the Lanham Act is "not limited to confusion at the point of sale" but also includes initial interest and post-sale confusion. *Checkpoint Sys. v. Check Point Software Tech*, 269 F.3d 270, 295 (3d Cir. 2001) (citing

*Koppers Co. v. Krupp-Koppers GmbH*, 517 F.Supp. 836, 843-44 (W.D. Pa. 1981) (holding Congress intended to broaden the scope of protections with the 1962 Amendment to the Lanham Act); 3 McCarthy on Trademarks Unfair Competition, § 23.7 (noting Lanham Act's "expansion of the test of infringement and held that it supports a finding of infringement when even non-purchasers are deceived.")). Defendants' Goods are sold online. HOL's complaint contains actual screenshots of Freebandz' website and Instagram page where the Goods were marketed and sold, which show the internal labeling is not visible while the "High Off Life" branding is. [Dkt. 1 ¶¶ 27-29, 31] It is thus highly likely a consumer would never see the Goods' internal tags when the consumer was making his or her purchasing decision, and the tags would certainly not be visible when the purchaser was wearing the garment. What clearly is visible pre- and post-purchase, however, are the "High Off Life" marks. [*See id*.] The Goods' internal labeling therefore cannot prevent a likelihood of consumer confusion, which can include confusion before a purchase is made and confusion by third parties after a purchase when the consumer is wearing Defendants' apparel. *See, e.g.*, *Levi Strauss Co. v. Blue Bell, Inc*., 632 F.2d 817, 822 (9th Cir. 1980) (holding, in suit by Levi Strauss over Wrangler's use of similar jeans pocket tab trade dress, that Wrangler's extensive labeling, including its own name on the very tag at issue, was not sufficient to avoid confusion as to source in the post-sale context because "point of sale materials are removed by the purchaser and have no confusion-obviating effect when the pants are worn.").

Though a few of the Goods may contain references to other phrases or images associated with the Album, most of the Goods merely depict the "High Off Life" mark without any reference whatsoever to Future or the Album. [*See id*.] And, as pled, these are identical goods to those claimed in HOL's registered trademarks and for which HOL has common law rights, and Defendants' use of the marks on the Goods has caused actual confusion. [Dkt. 1 ¶ 19, 22, 39] Given the facts pled in the complaint, there is plainly a possibility a "reasonable factfinder could find a likelihood of confusion on any set of

facts that plaintiff could prove." *Brown*, 745 F. Supp. 2d at 617. Defendants' attempt to obtain dismissal on no likelihood of confusion must therefore be denied. *Id.*

IV.    **The *Rogers* Test is Also Inapplicable to the Album Title, Which Uses An Identical Title in a Confusingly Similar Manner**

With regard to the Album, Defendants contend that if there is *any possible interpretation* connecting "High Off Life" with the Album's lyrics, then HOL's claims must be dismissed. But that is not the law. Rather, the *Rogers* test is not properly applied to the Album-related infringement claims because (a) the Album title "High Off Life" is confusingly similar to the titles of HOL's hip-hop-related events, music production services, and television shows, and (b) Defendants admit they have not used the phrase "High Off Life" to refer to HOL or to signify the same meaning that is associated with HOL's use of its marks. While the First Amendment allows one to make use of another's trademark in an expressive way to comment on or critique the trademark or the idea it embodies, one cannot use another's trademark for any purpose at all. Holding otherwise would enable widespread misappropriation of registered marks and use of those marks to advertise and sell similar products—which is what Defendants have done here. That conduct is not protected by the First Amendment.

First Amendment rights are necessarily in tension with trademark rights. Defendants argue for an expansive application of the *Rogers* test—relying entirely on Second and Ninth Circuit, rather than Third Circuit, law. But Defendants' position is not in alignment with the Third Circuit's more circumspect view of *Rogers* as demonstrated in *Facenda*. 542 F.3d at 1015-16. The Third Circuit has expressly declined to follow Second Circuit's holding that the *Rogers* test was "generally applicable" to works of artistic expression. *Id.* There is no indication the Third Circuit would follow the Ninth Circuit's similarly broad view. Rather, the analysis set out here is a more appropriate, narrower view in keeping with the binding precedent of *Facenda*.

### A.  Album is Exempt From *Rogers* Test Because Its Title is Confusingly Similar to Titles of HOL's Hip-Hop Music Events, Hip-Hop Music Production, and Hip-Hop-Related Streaming Shows

The Album title is identical to the titles of HOL's hip-hop events, music production services, and streaming shows. *Rogers* itself noted that the First Amendment did not allow a person to use any trademark for any assertedly expressive purpose. Rather, "[p]oetic license is not without limits. The purchaser of a book, like the purchaser of a can of peas, has a right not to be misled as to the source of the product. . . . Books are sold in the commercial marketplace like other more utilitarian products, making the danger of consumer deception a legitimate concern that warrants some government regulation." *Rogers*, 875 F.2d at 997-98; *see Silverman v. CBS Inc*., 870 F.3d 40, 49 (2d Cir. 1989) ("Trademark protection is not lost simply because the allegedly infringing use is in connection with a work of artistic expression."). Therefore, *Rogers* explicitly held that its "limiting construction [of the Lanham Act] would not apply to misleading titles that are confusingly similar to other titles." 875 F.2d at 999 n. 5. "The public interest in sparing consumers this type of confusion outweighs the slight public interest in permitting authors to use such titles." *Id*.

If two titles are at issue, the relevant question is whether the defendant's use of the word or phrase as a title is confusingly similar to the plaintiff's use of its mark as a title. *See Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883, 888 (N.D. Cal. 2010) ("Thus, the relevant question is whether [defendant rapper's] use of the word rebelution in his album title is confusingly similar to the title of plaintiff's album and band name."). When there exists a likelihood the titles could be confusingly similar, "the First Amendment protections offered by *Rogers* do not apply." *Id*. That determination is made by analyzing the likelihood of confusion factors. *Id*.

Here, HOL pled that it has used the "High Off Life" marks as the titles for "High Off Life Concerts," "High Off Life TV," and "High Off Life Freestyles," all produced and released by HOL, and all directly relating to the same type of music and subject

12

matter as the Album. [Dkt. 1 ¶¶ 3-4] HOL has also produced hip-hop content such as music videos for other artists under the "High Off Life" brand. [*Id*.] Further, HOL owns a federal trademark registration for HIGH OFF LIFE ENTERTAINMENT in class 41 for "Entertainment services in the nature of recording, production and post-production services in the field of music." [*Id*. ¶ 21] Thus, the relevant question is whether Defendants' use of the phrase "High Off Life" as the Album title is confusingly similar to the titles of HOL's hip-hop concerts, freestyle rap releases, streaming shows, and music videos featuring hip-hop music. HOL has pled facts sufficient to show a reasonable factfinder may—especially in light of HOL's ownership of a family of "High Off Life" marks and longtime use of the marks in the hip-hip music industry—be confused as to whether the Album was associated with or connected to HOL or involved a collaboration between HOL and Defendants. A more detailed analysis of likelihood of confusion is inappropriate on a motion to dismiss. *See Brown*, 745 F. Supp. 2d at 617. Because the facts support that the Album title could be confusingly similar to the identical titles of HOL's hip-hop-related events, shows, and services, the Court should not apply the *Rogers* test to the Album and the motion should be denied.

### B.   *Rogers* Does Not Apply Because Defendants Admit Album Title Does Not Refer to HOL or the Same Meaning Associated With HOL's Marks

Another reason the *Rogers* test should not be applied to the Album is that Defendants admit the title "High Off Life" is neither a reference HOL nor used to signify the same meaning associated with HOL's marks. For the *Rogers* test to apply, other district courts have held that defendants "must thus show that they used plaintiff's mark to refer to the meaning associated with plaintiff's mark." *Rebelution*, 732 F. Supp. 2d at 889. In other words, a defendant only has a valid defense if it used another's mark for a First Amendment-protected purpose of commentary on or critique of the mark or the meaning the mark conveys. Otherwise, anyone with the motivation could claim any mark in the world bears some relation, in their subjective interpretation, to their expressive

work. That would leave any mark open for the taking, which is not the law. *See id*.

*Rebelution* involves similar facts to here—the plaintiff reggae band owned a registered trademark for the band's name, "rebelution," which a rapper, Pitbull, used without authorization as the title of his hip-hop album. *Id*. at 886-87. The court denied Pitbull's motion for summary judgment on a First Amendment defense. It held *Rogers* did not apply because Pitbull admittedly had not intended to use the term "rebelution" to refer to the plaintiff band or the meaning associated with the plaintiff's mark, but rather for the unrelated purpose of symbolizing Pitbull's own struggle in life. *Id*. at 889. The court explained that "[i]n every federal court of appeals case addressing the artistic adoption of plaintiff's non-generic mark, *the artistic relevance of defendant's use of the mark related to the meaning associated with plaintiff's mark*." *Id*. (citing *Rogers*, 875 F.2d at 996-97 (movie title referring to plaintiff Ginger Rogers); *Cliff Notes v. Bantam Doubleday Dell Pub. Group*, 886 F.2d 490, 491 (2d. Cir. 1989) (publication allegedly parodying plaintiff's publication named Cliff Notes); *Twin Peaks Prods., Inc. v. Pubs. Int'l, Ltd*., 996 F.3d 1366, 1370 (2d. Cir. 1992) (book title referring to plaintiff's television series named Twin Peaks); *MCA Records*, 296 F.3d at 899 (band referring to plaintiff's famous doll, Barbie); *ETW Corp. v. Jireh Pub., Inc*., 332 F.3d 915,  918-19 (6th Cir. 2003) (painting referring to plaintiff Tiger Woods); *Walking Mountain Prod*., 353 F.3d at 796 (photographer referring to plaintiff's famous doll, Barbie); *Rock Star Videos*, 547 F.3d at 1097 (video game maker allegedly referring to plaintiff's strip club)). The Sixth Circuit drew the same conclusion in *Parks v. Laface Records*, 329 F.3d 437, 454 (6th Cir. 2003) (explaining "the title in *Rogers* was obviously relevant and truthful as to the film's content, because the film was about the main characters known in the film as Ginger and Fred. In contrast, it cannot be said that the title in the present case, *Rosa Parks*, is clearly truthful as to the content of the song").

By contrast to cases where a defendant used a plaintiff's mark to refer to the plaintiff or the meaning associated with the mark, the *Rebelution* court held "[Pitbull's]

argument—that the content of his album bears relevance to *his* interpretation of the word rebelution—is . . . unsupported by [case law]." *Rebelution*, 732 F. Supp. 2d at 889. The court found if every First Amendment defense could be based on the defendant's own subjective interpretation of a title's alleged relationship to the work, that "at its logical conclusion, would allow any person to ascribe their own meaning to a mark and thereafter argue that their artistic work bears relevance to this opportunistically-defined meaning." *Id*. "Indeed, it would allow defendants to co-opt the most fanciful marks—marks afforded great protection under trademark law—as those marks are the most susceptible to differing interpretations." *Id*. That "is not the law." *Id*. (rejecting as "unpersuasive" the defendants' reliance on *Roxbury Entertainment v. Penthouse Media Group*, 669 F. Supp. 2d 1170 (C.D. Cal. 2009), because even *Roxbury* "relates to defendants' reference [in an adult movie involving a road trip] to the meaning associated with the plaintiff's mark [for "Route 66"]."). *Rebelution*, 732 F. Supp. 2d at 889.

 *Rebelution* builds on a point made in *Rogers*—that the First Amendment protects an artist's ability to make commentary *about a trademark or the meaning the mark conveys*. *See also Seale*, 949 F. Supp. at 340 (holding defendants could use Bobby Seale's likeness on a film about the Black Panthers but had no First Amendment right to use the likeness on an album containing a collection of songs with no "direct connection" to Seale). If a song is about Rosa Parks, then there is a First Amendment right to title that song *Rosa Parks*. *See Parks*, 329 F.3d at 454. But one cannot arbitrarily title a song *Rosa Parks* when it has nothing to do with her. *See id*. Likewise, an artist could name a song *Coca-Cola* because it is about drinking Coca-Cola soda all day or because it critiques Coca-Cola as a company. But if an artist names a song *Coca-Cola* and it is instead about drinking vodka all day, there is no First Amendment right to use the *Coca-Cola* trademark in that context. One could imagine Sony on the opposite side of this issue if a band released an album titled "PlayStation" and started selling related "PlayStation" branded clothing, while claiming the title related to the artist's enjoyment of bus stations.

Similarly, Nike should have a valid Lanham Act claim if one sold an album and allegedly related "promotional" clothing bearing the "Just Do It" mark and the swoosh logo. Merely making a mark an album title does not create a gaping Lanham Act loophole.

Here, Defendants admit they are using the "High Off Life" title neither to comment on HOL directly nor to call to mind the same meaning associated with HOL's marks. HOL pled in the complaint that HOL's founder uses the mark "High Off Life" to "emphasize his focus on more positive, conscious subject matter." [Dkt. 1 ¶ 1] In other words, the meaning associated with HOL's marks is to get enjoyment life itself, *without* drugs. By contrast, Defendants state the title of the Album is "a nod to Future's numerous references to drug use . . . ." [Dkt. 20 at 15] And the Album is replete with references to drug use. *See* Declaration of Stephen McArthur ("McArthur Decl.") filed herewith, Exhibit ("Ex.") A (Album lyrics with various drug references highlighted).[3] In the first song, *Trapped in the Sun*, Future references being on Adderall, having "dope in my blood," being "full of promethazine," and needing some "molly" (MDMA/ecstasy) to "boost your self-esteem." McArthur Decl., Ex. A at 3. The next song, *HiTek Tek*, covers having big guns, drinking codeine cough syrup ("drank"), selling cocaine, taking amphetamines ("beans"), having a woman take amphetamines, and being high on methamphetamine for seven days ("I been already geeked for seven days"). *Id*. at 5-6. Overall, the Album's lyrics refer to (at least) codeine, cocaine, Percocet, MDMA, Adderall, Promethazine, marijuana, cough syrup, methamphetamine, PCP, and unspecified pills. What the album lyrics do not contain is any use of the phrase "High Off Life" in any context. That phrase is absent from the Album. The facts therefore fully support that Defendants are not using the mark "High Off Life" for the First Amendment-

---

[3] As Defendants note, the Court can consider the Album's lyrics in the context of this motion to dismiss. *See In re Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment").

protected purpose of referencing HOL or the drug-free positive meaning associated with HOL's marks. Rather, Defendants are using HOL's mark—which they admit was a last-minute choice for an album intended to be titled "Life is Good"—arbitrarily to sell their identical goods, creating the likelihood consumers will be confused. That is not protected speech. *See Rebelution*, 732 F. Supp. 2d at 889. This is a second reason the Court should not apply *Rogers* to the Album title and should deny the motion to dismiss.

### C.   Defendant's Use of "High Off Life" Fails *Seale*'s Application of the *Rogers* Test Because The Trademarked Term is Not "Clearly Related" to the Album Content

Even if the Court does apply the *Rogers* test to the Album, the outcome remains the same. In keeping with *Facenda*'s more limited view of *Rogers*, the Court should look to the Eastern District of Pennsylvania's decision *Seale,* also cited by Defendants. There, the court held the defendant could satisfy the first prong of the *Rogers* test by proving its use of a mark was "clearly related to the content of the" expressive work. *Seale*, 949 F. Supp. at 337 (quoting *Rogers*, 875 F.2d at 1004-05). The *Seale* court held the defendant had a First Amendment defense to its use of Bobby Seale's likeness on the cover of a book and movie about Seale and the Black Panthers, because the images were "clearly related to the content of the film and the pictorial history book . . . ." *Seale*, 949 F. Supp. at 340. However, the court denied summary judgment on the defendant's use of Seale's likeness on the cover of a musical album that accompanied the Black Panther book and movie. *Id*. Unlike the book and movie, the album was "merely a collection of different songs performed by different musicians, which songs have *no direct connection* to the Plaintiff or the history of the Black Panther Party." *Id*. at 337 (emphasis added). Thus, there was a genuine issue of material fact as to whether Seale's likeness was "clearly related" to the album's content. *Id*. at 340. As the *Seale* court notes, this "clearly related" test is in line with *Rogers* and should be applied by this Court.

Here, a reasonable person could find the Album content is not clearly related to the phrase "High Off Life" as it concerns HOL or HOL's brand. Defendants admit the

content of the Album has *nothing to do* with HOL or its brand, which focuses on a positive message of enjoying life without drugs. As HOL pled, and Defendants admit, "High Off Life" was a last-minute choice for the Album title, the content of which Future created on the belief the album would be titled "Life is Good". [Dkt. 1 ¶¶ 6, 25] *see also* McArthur Decl., Ex. B (media interview with Future dated April 7, 2020, just one month before Album release, where he discusses title being "Life is Good" and explains the relationship between *that* title and the album content).[4] There are no facts in the record to support Defendants' new factual allegation in their brief that Future himself chose "High Off Life" as a replacement title. The title could very well have been picked by a Sony marketing manager who thought it would help sell the Album. Even some subjective metaphoric or symbolic relation alleged to exist between title and content would not satisfy Defendants' burden of proof. *See Parks*, 329 F.3d. at 452-53 (rejecting rap group's argument their *Rosa Parks* song was "metaphorically" or "symbolically" related to Ms. Parks because the song lyrics referred to moving to the back of the bus).

Overall, the facts pled by HOL fully support its allegation in the complaint that the Album title "High Off Life" is not clearly related to the Album's content. [Dkt. 1 ¶¶ 7, 26] If anything, as in *Parks*, the Album's content is "clearly *antithetical* to the qualities" associated with HOL's brand—being positive, conscious, and enjoying life without drugs. *See Parks*, 329 F.3d. at 454. Because a reasonable person could find that the Album's content is not clearly related to the title "High Off Life," Defendants cannot satisfy the first prong of the *Rogers* test, and their motion to dismiss the claims relating to the Album should be denied. *See Seale*, 949 F. Supp. at 340; *Parks*, 329 F.3d at 452

---

[4] HOL provides this article to show that the factual allegations it made in the complaint are fully supported. Even if the Court were to admit the article into the record, which would not be necessary to rule on the motion, that would not require converting this motion to a summary judgment motion. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) ("Where a district court explicitly confines its ruling to the complaint, however, our review is as under a motion to dismiss, even where additional materials were admitted into the record.").

(reversing district court's grant of summary judgment for defendants on First Amendment grounds where "the artistic relationship between the title and the content of the song is certainly not obvious and, indeed, is open to reasonable debate").

### D.   The Title Explicitly Misleads as to the Source or Content of the Work

Defendants cannot satisfy the second prong of the *Rogers* test either. A trademark should be enforced, even against titles of expressive works, "when consumers are likely to be misled or confused by the alleged infringer's use." *Facenda*, 542 F.3d at 1018 (citing *Central Hudson, Gas Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980) ("[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity."); 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:142, at 31-229 (4th ed. 1996 Supp. 2008) (describing the low level of First Amendment protection for misleading speech)). The *Rogers* court stated as to the second prong of its test, "titles with at least minimal artistic relevance to the work may include explicit statements about the content of the work that are seriously misleading." 875 F.2d at 1000. Such misleading titles are not protected by the First Amendment. *See id*.

Here, Defendants' usage of the "High Off Life" mark is misleading in the same sense as someone who sells an album titled "The Beatles" would be. HOL owns a registered trademark for *the exact term* used as the Album title for the *exact* products and services being sold under that mark by Defendants. [Dkt. 1 ¶¶ 3-4, 19-21] From HOL's long-time use of "High Off Life" in relation to hip-hop concerts and television shows, consumers had come to expect hip-hop-related goods and services bearing that mark to come from or be associated with HOL. A reasonable factfinder could thus conclude that consumers would expect a hip-hop album bearing the mark "High Off Life" to originate from or be affiliated with HOL. This is no different from consumers who, quite reasonably, could believe an album bearing the mark "Epic Records" originates from Epic Records, a Sony Music label. Defendants' use of an identical trademark on identical

19

goods—a hip-hop album—creates the likelihood consumers will be misled as to whether the Album originates from HOL or is affiliated with or connected to HOL, such as a collaboration between HOL and Defendants.

Moreover, the facts show the Album title "High Off Life" is explicitly misleading as to the Album's content, which is *never* about being high off life. Rather, the Album is largely about being high off nearly every drug imaginable—from prescription pills to cough syrup to various Schedule 1 drugs. A consumer seeking HOL's positive, conscious message about enjoying life drug-free is not going to find it in the Album. This creates an even higher likelihood HOL will be damaged by confusion between its goods and services and Defendants' Album.

Defendants seek to circumvent the Lanham Act with twisted interpretations of Ninth Circuit case law that do not apply in this Circuit. But there is no Lanham Act loophole that allows the use of a mark in a way that is misleading to consumers just because the mark happens to be used as the title of an album. HOL has pled facts supporting that a reasonable person could find consumers may be misled by the "High Off Life" mark appearing on the Album. Any further analysis of the likelihood of confusion is not appropriate on a motion to dismiss. Therefore, the Court should deny Defendants' motion. The Album-related infringement claims are not subject to the *Rogers* test, and, even if that test were applied, Defendants cannot meet their burden of proof to warrant dismissal of HOL's claims with prejudice.

<u>Conclusion</u>

Defendants' attempts to inject new factual allegations at this stage demonstrates their motion to dismiss is premature and should be denied on that ground alone. On the merits, the "High Off Life" branded Goods are clearly commercial speech that is exempt from the *Rogers* test under the binding law of *Facenda*. And HOL has pled sufficient facts in the complaint to support that a reasonable factfinder could find a likelihood of confusion. The Album title is also commercial speech that is not subject to the *Rogers*

test because it is confusingly similar to HOL's titles for hip-hop events and shows featuring hip-hop and freestyle rap, and because Defendants admit they do not use the phrase "High Off Life" to refer to HOL or the meaning associated with HOL's marks. Should the Court apply the *Rogers* test to the Album, a reasonable person could find the title "High Off Life" is not clearly related to the Album's content or is explicitly misleading as to the origin from or association with HOL. For these reasons, Defendants' motion to dismiss should be denied in its entirety. If the Court finds the complaint to be missing any necessary facts, it should grant leave to amend rather than dismissal with prejudice as requested.

Lastly, because HOL's Lanham Act claims should survive the motion to dismiss, its state law trademark claims do as well. *See Cornette*, No. 3:19-cv-219, at *10 n.9 ("As the Court concludes that Cornette's Lanham Act claims survive, his state law trademark claims do as well.").

Respectfully submitted,

DATED: January 20, 2021                  THE MCARTHUR LAW FIRM, PC

By:  /s/ *Stephen C. McArthur*
Stephen C. McArthur (admitted *pro hac vice*)
Thomas E. Dietrich (admitted *pro hac vice*)
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
(323) 639-4455
stephen@smcarthurlaw.com
tom@smcarthurlaw.com

*Attorneys for Plaintiff High Off Life, LLC*

21

**<u>Certificate of Service</u>**

I hereby certify that on January 20, 2021, I electronically filed the foregoing **PLAINTIFF HIGH OFF LIFE, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

THE MCARTHUR LAW FIRM, PC

By:  /s/ *Thomas Dietrich*
Thomas Dietrich