**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HIGH OFF LIFE, LLC, | ) | Civil Action |
| | ) | |
| Plaintiff, | ) | No. 2:20-cv-1556-WSH |
| | ) | |
| v. | ) | Judge W. Scott Hardy |
| | ) | |
| FREEBANDZ PRODUCTIONS, LLC, and | ) | |
| SONY MUSIC HOLDINGS, INC. | ) | ***Electronically Filed*** |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM OF DEFENDANTS FREEBANDZ**
**PRODUCTIONS, LLC AND SONY MUSIC ENTERTAINMENT IN**
**FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

No. 2:20-cv-1556-WSH

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ........................................................................1

I.    THE COMPLAINT DOES NOT STATE A PLAUSIBLE CAUSE OF ACTION ...........2

II.   THE ALBUM TITLE IS ENTITLED TO FIRST AMENDMENT PROTECTION .........4

      A.   *Rogers* Applies to the Album Title................................................4

      B.   The Album Satisfies the First Prong of the *Rogers* Test;
           Its Title Easily Clears the "Purposely Low" Bar of Artistic Relevance......................7

      C.   *High Off Life* Satisfies the Second Prong of the *Rogers* Test;
           It Did Not Explicitly Mislead Consumers as to its Source.........................................9

III.  THE GOODS ARE ENTITLED TO FIRST AMENDMENT PROTECTION.................10

      A.   *Facenda* Does Not Preclude Application of *Rogers* to the Goods ...........................10

      B.   Use of "High Off Life" on the Goods Does Not Indicate Source...........................12

IV.   THE COURT MAY CONSIDER DEFENDANTS' FIRST
      AMENDMENT DEFENSE AT THE MOTION TO DISMISS STAGE.........................14

V.    PLAINTIFF SHOULD BE DENIED LEAVE TO AMEND ITS COMPLAINT.............14

CONCLUSION....................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                                       **<u>PAGE(s)</u>**

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
   No. CV 06-6245 AHM (SSX), 2007 WL 4973852 (C.D. Cal. Aug. 17, 2007)........................ 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................ 2

*Brown v. Electronic Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ........................................................................................ 4, 11

*In re Burlington Coat Factory*,
   114 F.3d 1410 (3d Cir. 1997)............................................................................................. 8

*CI Games S.A. v. Destination Films*,
   No. 2:16-CV-05719-SVW-JC, 2016 WL 9185391 (C.D. Cal. Oct. 25, 2016)................ 5, 9, 10

*Clark v. United States*,
   No. 13-490C, 2015 U.S. Claims LEXIS 750 (Fed. Cl. June 12, 2015) ...................................... 2

*Cornette v. Graver*,
   No. 3:19-CV-219, 2020 WL 1643370 (W.D. Pa. Apr. 2, 2020)............................................... 14

*Dickinson v. Ryan Seacrest Enters. Inc.*,
   No. 19-55415, 2020 WL 7496424 (9th Cir. Dec. 21, 2020)....................................................... 4

*Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*,
   No. 11 C 8224, 2012 WL 2953188 (N.D. Ill. July 19, 2012),
   *aff'd*, 707 F.3d 869 (7th Cir. 2013) ......................................................................................... 6, 14

*Epps v. Harper*,
   No. CV 16-135, 2017 WL 1355343 (W.D. Pa. Apr. 13, 2017) ................................................. 13

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
   547 F.3d 1095 (9th Cir. 2008) ................................................................................................ 7, 8, 9

*Facenda v. NFL Films, Inc.*,
   542 F.3d 1007 (3d Cir. 2008)............................................................................................... 1, 11, 12

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
   947 F. Supp. 2d 922 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014)............................ 14

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009), *overruled on other grounds by Guirguis v. Movers Specialty
   Services, Inc.*, 346 F. App'x 774 (3d Cir. 2009) ........................................................................ 2

## CASES                                                                 PAGE(s)

*Gordon v. Drape Creative, Inc.*,
   909 F.3d 257 (9th Cir. 2018) ..................................................... 4

*Hidden City Philadelphia v. ABC, Inc.*,
   No. CV 18-65, 2019 WL 1003637 (E.D. Pa. Mar. 1, 2019)................................. 9, 15

*Ickes v. Flanagan*,
   No. 07-143J, 2008 WL 859183 (W.D. Pa. Mar. 31, 2008)..................................... 13

*IOW, LLC v. Breus*,
   425 F. Supp. 3d 1175 (D. Ariz. 2019) ..................................................... 4

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004)............................................................................ 5, 6

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012)........................................................ 7

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ............................................................ 6, 11

*Medina v. Dash Films, Inc.*,
   No. 15-CV-2551 (KBF), 2016 WL 3906714 (S.D.N.Y. July 14, 2016)............................ 2, 14

*Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*,
   74 F. Supp. 3d 1134 (N.D. Cal. 2014) ..................................................... 4

*Nicassio v. Viacom Int'l, Inc.*,
   309 F. Supp. 3d 381 (W.D. Pa. 2018), *aff'd*, 776 F. App'x 761 (3d Cir. 2019)...................... 15

*Rebellion Devs. Ltd. v. Stardock Entm't, Inc.*,
   No. 12-12805, 2013 WL 1944888 (E.D. Mich. May 9, 2013) ............................................ 5, 15

*Rebelution, LLC v. Perez*,
   732 F. Supp. 2d 883 (N.D. Cal. 2010) ............................................................ 4, 5, 7

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*,
   No. CV 18-2260-GW(FFMX), 2018 WL 6566561 (C.D. Cal. Aug. 27, 2018) ........................ 5

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1995)............................................................. *passim*

*Stewart Surfboards, Inc v. Disney Book Grp., LLC*,
   No. CV 10-2982 GAF (SSX), 2011 WL 12877019 (C.D. Cal. May 11, 2011) .................... 4, 5

**CASES**                                                                                      **PAGE(s)**

*Stillwater Lakes Civic Ass'n, Inc. v. Gorka*,
   No. 3:CV-08-2264, 2009 WL 10685190 (M.D. Pa. Apr. 2, 2009),
   *report and recommendation adopted*, No. 3:08CV2264, 2009 WL 10685456
   (M.D. Pa. Apr. 30, 2009) .................................................................................................. 8

*Twentieth Century Fox Film Corp. v. Empire Distr., Inc.*,
   875 F.3d 1192 (9th Cir. 2017) ................................................................... 4, 9, 10, 11

*Twentieth Century Fox Television v. Empire Distrib. Inc.*,
   161 F. Supp. 3d 902 (C.D. Cal. 2016), *aff'd sub nom. Twentieth Century Fox Television a
   division of Twentieth Century Fox Film Corp. v. Empire Distr., Inc.*, 875 F.3d 1192
   (9th Cir. 2017).................................................................................................. 4, 5, 8

*Woodard v. Jackson*,
   No. 1:03-CV-0844-DFH, 2004 WL 771244 (S.D. Ind. Mar. 25, 2004) .............................. 6, 15

**STATUTES**

Fed. R. Civ. P. 12(b)(6).............................................................................................6

**DICTIONARY**

https://www.merriam-webster.com/dictionary/high .......................................................2

Defendants Freebandz and Sony (collectively, "Defendants") respectfully submit this reply memorandum in further support of their motion to dismiss the Complaint filed by Plaintiff High Off Life, LLC ("Plaintiff").[1]

## PRELIMINARY STATEMENT

Plaintiff's own allegations provide the predicate for this Court to determine that Plaintiff cannot state plausible claims pertaining to Defendants' use of the common expression "high off life" as the title for an expressive work and the ancillary promotion of that work. The title of the Album, *High Off Life*, is manifestly connected to, inspired by and artistically relevant to its content, as the Album's track titles objectively establish. That discernible truth is rendered all the more evident by Plaintiff's allegation that the title of the Album was changed at the last minute from *Life Is Good* to *High Off Life*, two commonplace phrases that at the most basic level evoke and connote enjoyment of one's current state in life. The related promotion of the permissively titled Album through apparel bearing that very same title does not provide a cognizable basis for liability. The First Amendment protection permitting use of a term that may be another's trademark as the title of an expressive work, logically and properly extends to use of that title on goods sold to promote that work. The goods were created specifically to market and promote the expressive work; they would not have been sold but for the creation of the expressive work.

Plaintiff's opposition is anchored in an articulation of the *Rogers* test that has been widely criticized and discounted. It also relies heavily on application of *Facenda v. NFL Films, Inc.,* 542 F.3d 1007, 1024 (3d Cir. 2008), to argue that the Album could not be promoted by the Goods. As discussed below, *Facenda* presents an entirely dissimilar factual construct and is inapposite to an

---

[1] Capitalized terms not defined in this reply memorandum have the same meanings ascribed to them in Defendants' opening memorandum on this motion.

assessment of whether the phrase "high off life" can be used to promote an Album permissively titled *High Off Life*.

Fundamentally, the allegations of the Complaint and materials integral to it that the Court can consider on this motion establish, as a matter of law, that the title *High Off Life* is artistically relevant to the content of the Album and that the Album and the related Goods do not mislead, let alone explicitly mislead, consumers as to their source.

## I.   THE COMPLAINT DOES NOT STATE A PLAUSIBLE CAUSE OF ACTION

To avoid dismissal, the Complaint must contain sufficient factual matter showing that the claims are facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)*, overruled on other grounds by Guirguis v. Movers Specialty Services, Inc*., 346 F. App'x 774, 882 n. 6 (3d Cir. 2009). The allegations must "allow[] the court to draw the <u>reasonable inference</u>" that Defendants are liable for the misconduct alleged. *Id.*  (emphasis added).  The Court must "draw on its judicial experience and <u>common sense</u>" in deciding whether the Complaint states a plausible claim for relief. *Id.* at 211 (emphasis added; citation & quotations omitted).  Finally, allegations that are plainly contradicted by reviewable evidence are not afforded any presumption of truth. *See Clark v. United States*, No. 13-490C, 2015 U.S. Claims LEXIS 750, at *16 (Fed. Cl. June 12, 2015) (conclusory allegations that a work was copied are contradicted by the work itself).

Thus, it is not sufficient for Plaintiff simply to plead that the Album's title, *High Off Life*, "bears no relation to the expressive content of the album." (Comp. at ¶ 26.)  Not only is this a legal conclusion that the Court is not required to accept as true, but it is also a conclusion that defies common sense.  It is widely understood that the phrase "high off life" signifies enjoyment of life. Moreover, a review of the Album's songs, titles, and lyrics demonstrate that its theme is precisely

about enjoyment of life; the artist, Future, is not shy about letting his listeners know his life is good.

Plaintiff asserts that the Court must disregard Defendants' characterization of the Album's content, as factual allegations that are outside the scope of the Complaint because they conflict with Plaintiff's conclusory assertion that the title *High Off Life* has no artistic relevance to the content of the Album. (Dkt. 21 at 4-5.)   In particular, Plaintiff takes issue with the following objective statements: that "[h]igh off life" is viewed as "synonymous with 'life is good;'" that the Album is "a collection of songs about life and its joys;" and that the Album is "a product of Future reflecting on his life and recognizing his good fortune," focused on "spreading a message of positivity."   (*Id.* at 4-5.)  Plaintiff further disputes that the Album was meant to "conjure feelings of optimism, abundance, comfort, happiness, and self-love."   (*Id.* at 5.)   The foregoing are not factual allegations, but <u>common sense</u> observations and inferences drawn from the <u>facts alleged</u> in the Complaint and from the content of the Album, which is integral to and indeed the basis of the Complaint.[2]   It is reasonable to infer that the average person hearing the phrase "high off life" would interpret it to be akin to "life is good."   Similarly, someone listening to the Album and reading its lyrics would reasonably conclude that Future was extremely happy with his life.[3]  By asking the Court to disregard these observations as "new factual allegations," Plaintiff is improperly asking the Court to draw unreasonable inferences and set aside its common sense.

---

[2] Where a work is integral to the underlying claims, a court may consider the content of the work. *See Medina v. Dash Films, Inc.*, No. 15-CV-2551 (KBF), 2016 WL 3906714, at *4 (S.D.N.Y. July 14, 2016) (granting motion to dismiss after review of underlying work noting that "the work is centrally incorporated into the complaint and thus properly considered on this motion to dismiss, including where it flatly contradicts particular allegations") (citation & quotations omitted).

[3] It is universally understood that "high" refers to a state of euphoria.  Merriam-Webster provides several definitions of "high," including "filled with or expressing great joy or excitement" and "intoxicated by or as if by a drug or alcohol." https://www.merriam-webster.com/dictionary/high. In this regard, that a number of tracks on the Album deal with drug use can be said to render titling of the Album *High Off Life* an ironic artistic choice.

## II.   THE ALBUM TITLE IS ENTITLED TO FIRST AMENDMENT PROTECTION.

### A.   *Rogers* Applies to the Album Title.

It is well-established that the only threshold to applying the *Rogers* test is "whether the allegedly infringing use is contained in an expressive work."  *Twentieth Century Fox Television v. Empire Distrib. Inc.*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016), *aff'd sub nom. Twentieth Century Fox Television a division of Twentieth Century Fox Film Corp. v. Empire Distr.*, *Inc.*, 875 F.3d 1192 (9th Cir. 2017) (citing *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013); *see Dickinson v. Ryan Seacrest Enters. Inc.*, No. 19-55415, 2020 WL 7496424, at *1 (9th Cir. Dec. 21, 2020) ("[T]he only requirement for application of *Rogers* is that 'the [Appellees] … make a threshold legal showing that [their] allegedly infringing use [was] part of an expressive work protected by the First Amendment'") (quoting *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018)).

Plaintiff attempts to recast and rewrite the *Rogers* test by arguing that it does not apply where the title and the trademark are "confusingly similar" or where the title is "neither a reference [to the owner] nor used to signify the same meaning associated with [the owner's] marks," relying on *Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883, 888 (N.D. Cal. 2010).[4]  Courts have repeatedly rejected *Rebelution's* flawed interpretation of *Rogers* and its application.  *See Twentieth Century*

---

[4] The *Rebelution* court also stated that *Rogers* only applies where trademarks have "entered the cultural lexicon" or "have cultural significance."  *Rebelution*, 732 F. Supp. 2d at 887-88.  Courts have heavily criticized the *Rebelution* court's analysis and have resoundingly rejected its attempts to impose additional barriers to application of *Rogers*.  *See Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134, 1140 (N.D. Cal. 2014) (describing *Rebelution* as an "outlier" decision); *Stewart Surfboards, Inc v. Disney Book Grp., LLC*, No. CV 10-2982 GAF (SSX), 2011 WL 12877019, at *2 (C.D. Cal. May 11, 2011) ("Ninth Circuit did not hold that First Amendment protections come into play only where a trademark transcends its identifying purpose and becomes an integral part of our vocabulary."); *IOW, LLC v. Breus*, 425 F. Supp. 3d 1175, 1193 (D. Ariz. 2019) (stating that the cultural significance test was "an incorrect statement of the law").

*Fox Television a division of Twentieth Century Fox Film Corp.*, 875 F.3d at 1197 (rejecting the plaintiff's argument that the *Rogers* test does not apply where the titles are "confusingly similar" and where there is no reference to the other work); *CI Games S.A. v. Destination Films*, No. 2:16-CV-05719-SVW-JC, 2016 WL 9185391, at *4-6 (C.D. Cal. Oct. 25, 2016) (disagreeing with the plaintiff's argument that *Rogers* does not apply when the titles are "confusingly similar" and stating that the *Rogers* test does not have a referential requirement); *Stewart Surfboards, Inc v. Disney Book Grp., LLC*, No. CV 10-2982 GAF (SSX), 2011 WL 12877019, at *4 (C.D. Cal. May 11, 2011) (stating that there is no requirement that the "defendant's work to be 'about' the trademark or what the trademark signifies") (citation & quotations omitted); *Reflex Media, Inc. v. Pilgrim Studios, Inc*., No. CV 18-2260-GW(FFMX), 2018 WL 6566561, at *5 (C.D. Cal. Aug. 27, 2018) (applying the *Rogers* test where there were "confusingly similar titles at play"); *Rebellion Devs. Ltd. v. Stardock Entm't, Inc*., No. 12-12805, 2013 WL 1944888, at *3 (E.D. Mich. May 9, 2013) ("[t]his referential requirement is simply not required…").   As this long line of persuasive precedent confirms, the only prerequisite to applying the *Rogers* test is that the allegedly infringing use be in connection with an expressive work.  *See, e.g., Empire*, 161 F. Supp. 3d at 907.  Because the Album is indisputably an expressive work, *Rogers* applies.

Furthermore, *Rebelution* addresses a fact pattern that is entirely distinct from that presented here.  The trademark at issue in that case, REBELUTION, was "a made up term; it is not in the dictionary and has no commonly known connection with music recordings."  732 F. Supp. 2d at 891.  That is not the case with "High Off Life," a common phrase used in many contexts.  As the Supreme Court observed in *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc*., the Lanham Act was not meant "to deprive commercial speakers of the ordinary utility of descriptive words" and does not grant "a complete monopoly on [the] use of a descriptive term…" when

someone selects an originally descriptive term as their trademark.  543 U.S. 111, 122 (2004).  The

Court further cautioned that "[i]f any confusion results, that is a risk the plaintiff accepted when it

decided to identify its product with a mark that uses a well-known descriptive phrase."  *Id.* (citation

& quotations omitted).  A "trademark owner does not have the right to control public discourse

whenever the public imbues his mark with a meaning beyond its source-identifying function."

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002).  Plaintiff's attempt to limit

the vernacular lexicon by arrogating to itself the right to control a well-known term that it did not

create should therefore be rejected.

Thus, courts have consistently held that artistic works with descriptive titles do not

constitute trademark infringement.  *See Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, No.

11 C 8224, 2012 WL 2953188, at *3 (N.D. Ill. July 19, 2012) (applying *Rogers* and dismissing

infringement claims that the film title "50/50" infringed plaintiff's trademark PHIFTY-50), *aff'd*,

707 F.3d 869 (7th Cir. 2013); *Woodard v. Jackson*, No. 1:03-CV-0844-DFH, 2004 WL 771244,

at *7 (S.D. Ind. Mar. 25, 2004) (dismissing trademark infringement claims against album, holding

the challenged portion of the title, "Ripples and Waves," had the requisite degree of artistic

relevance to the album).[5]  Similarly, "high off life" is a descriptive phrase that has been used

regularly in the music industry.  As Defendants pointed out in their opening memorandum, dozens

of albums and songs have been titled *High Off Life.*  (Dkt. 20 at 15 n.2.)  It is apparent from the

---

[5] In *Eastland Music*, the Seventh Circuit found that the film "50/50" did not infringe on the mark "Phifty-50" because the phrase "50/50" or sound-alike variants of it had been used as titles of intellectual property for a long time.  In affirming the dismissal of the Lanham Act claim on a 12(b)(6) motion, the court noted that the "50/50" Wikipedia page listed eight films, three television shows, and three songs with titles containing "50/50" and that many of these works predated Eastland Music's use.  *Eastland Music Grp., LLC*, 707 F.3d at 871.  Eastland Music was a "junior user and in no position to complain about the 2011 film.  Phifty-50 entered a crowded field, and its rights are correspondingly weak and narrow."  *Id.*

frequent use of the phrase in the music industry that "high off life" has not attained marketplace

distinction such that it serves as a single source identifier of Plaintiff's services.  "High off life"

could refer to Plaintiff *or any number of albums and tracks made by other artists*.

Because "high off life" is a descriptive phrase that is part of the vernacular, *Rebelution* is

not applicable.  The court specifically found fatal to the *Rogers* defense the lack of evidence that

the "word rebelution or plaintiff's mark has entered the public discourse or become an integral part

of our vocabulary" and that there was "no uniform meaning associated with either the word or the

mark." *Rebelution*, 732 F. Supp. 2d at 888.  Only because neither the term nor the mark had "taken

on an expressive meaning apart from its source-identifying function, no First Amendment rights

are implicated and the *Rogers* test is inapplicable." *Id.*  (citation & quotations omitted).  Those

facts are not present here.  "High off life" is part of the public discourse.  "High off life" is part of

general vocabulary.  "High off life has a uniform meaning that is wholly independent of Plaintiff's

trademark.  For these reasons (as set forth in *Rebelution*), First Amendment protections are

triggered here, making *Rogers* rightfully applicable to the court's analysis.

### B.      The Album Satisfies the First Prong of the *Rogers* Test; Its Title Easily Clears the "Purposely Low" Bar of Artistic Relevance.

"The threshold for 'artistic relevance' is purposely low and will be satisfied unless the

use 'has no artistic relevance to the underlying work whatsoever.'"  *Louis Vuitton Malletier S.A.

v. Warner Bros. Entm't Inc*., 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (citation & quotations

omitted).  A defendant need only demonstrate that the mark's relevance to the artistic work is

"above zero." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc*., 547 F.3d 1095, 1100 (9th Cir.

2008).  Despite this well-established rule, Plaintiff argues that the Album's title does not satisfy

this prong of the test because "the Album content is not clearly related to the phrase 'High Off

Life' as it concerns [Plaintiff] or [Plaintiff's brand].'"  Plaintiff also claims that *High Off Life* is

not artistically relevant to the Album's contents because Future created it when the title was

"Life is Good."  These arguments are at odds with the caselaw, facts, and common sense.

As addressed above, Plaintiff's argument that the Album's content must relate to the

Plaintiff or its brand has been repeatedly rejected.  *See, e.g., Empire,* 161 F. Supp. at 907.  The

*Rogers* test does not require *High Off Life* to reference Plaintiff or adopt Plaintiff's subjective

understanding of its mark, which Plaintiff insists means the "enjoyment of life *without* drugs."

(*See* Dkt. 21 at 2 and 16 (emphasis in original.).)[6]  All *Rogers* requires is that the album name have

artistic relevance to its contents that is above zero.  *See, E.S.S. Entm't*, 547 F.3d at 1100.  *High Off*

*Life* easily clears this threshold.  The phrase "high off life" is commonly understood to signify

being happy with life, and it is clearly perceptible from the Album's song titles and lyrics that

Future's life is good and that he is enjoying it.

Plaintiff actually confirms this conclusion when it argues that *High Off Life* cannot be

artistically relevant to its contents because Future had created the Album with the title "Life is

Good" in mind.  (Dkt. 21 at 17-18.)   In support of this argument, Plaintiff points to an interview

where Future discusses *High Off Life,* which at the time was still slated to be released as *Life is*

*Good.  See* McArthur Decl., Ex. B.  As Plaintiff acknowledges, this interview is neither "integral

to or explicitly relied upon in the Complaint" and the Court may not consider it in determining this

motion to dismiss.  *In re Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation &

quotations omitted).  Yet, were the Court to consider the article, it would not bolster Plaintiff's

---

[6] This subjective interpretation of "high off life" was not alleged in the Complaint and is not a
factual allegation that the Court is required to accept as true.  *See Stillwater Lakes Civic Ass'n, Inc.
v. Gorka,* No. 3:CV-08-2264, 2009 WL 10685190, at *1 (M.D. Pa. Apr. 2, 2009), *report and
recommendation adopted*, No. 3:08CV2264, 2009 WL 10685456 (M.D. Pa. Apr. 30, 2009) (not
considering the plaintiff's allegations in its opposition to the defendants' motion to dismiss because
a plaintiff cannot amend its complaint through a brief).

position.  If anything, the interview refutes Plaintiff's allegation that the phrase "High off Life" is not artistically relevant to the Album's contents.  Future confirms that the Album is "about life and being good and enjoying life" and that "'Life is good' is where I am at. Mentally, life is good, it's just a state of mind… I want to send a positive message through hard times for me or anyone else." McArthur Decl. Ex. B.  By submitting this interview, Plaintiff effectively concedes that the title *High Off Life* is artistically relevant to the Album's contents.  That interview aside, Plaintiff does not cite any support for its suggestion that the Album is only artistically relevant to its original title or that only Future could have picked an artistically relevant title.

## C.   *High Off Life* **Satisfies the Second Prong of the *Rogers* Test;** **It Did Not Explicitly Mislead Consumers as to its Source.**

The "explicitly misleading" prong of the *Rogers* test focuses on whether the defendant took any action, <u>separate and apart</u> from using the trademark in the expressive work, to mislead consumers as to who was responsible for creating the work.  *E.S.S. Entm't 2000*, 547 F.3d at 1100 (emphasis added).  Indeed, to be explicitly misleading, there must be an "'explicit indication,' 'overt claim,' or 'explicit statement' that causes consumer confusion."  *Hidden City Philadelphia v. ABC, Inc.*, No. CV 18-65, 2019 WL 1003637, at *4 (E.D. Pa. Mar. 1, 2019) (quoting *Twentieth Century Fox Television*, 875 F.3d at 1199).  This prong is particularly important where the dispute concerns the title of an artistic work because "while consumers may look to the name of a product to identify its producer, the same is not true of the titles of artistic works, which consumers expect to identify the subject of the work but not the source."  *CI Games S.A.*, 2016 WL 9185391, at *3 (citations omitted).  "Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer."  *Id.* at *8 (citation & quotations omitted); *see also Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1995) (observing that titles of artistic works may include a well-known name "without any overt indication of authorship or

endorsement – for example, the hit song "Bette Davis Eyes" and the recent film "Come Back to the Five and Dime, Jimmy Dean, Jimmy Dean.""").[7]

Plaintiffs do not, and cannot, allege that Defendants made any statements or took any action to "explicitly mislead" consumers into thinking that Plaintiff sponsored or participated in the creation of *High Off Life*. Defendants indisputably did not market the Album as "endorsed" or "sponsored" by Plaintiff or make any statement that the Album was affiliated with Plaintiff in any way. Rather, *High Off Life's* album cover and song list reference only three potential sources: Future, and Defendants Freebandz and Sony (by its Epic Records label). Instead of addressing these objective facts, Plaintiff asserts that "a reasonable factfinder could thus conclude that consumers would expect a hip-hop album bearing the mark "High Off Life" to originate from or be affiliated with HOL." (Dkt. 21 at 19.) Not only does Plaintiff fail to cite a single authority for this argument, but the premise of it – that consumers look to an artistic work's title as its source – is erroneous. *See CI Games S.A.* 2016 WL 9185391, at *3 (consumers expect a work's title to convey the work's subject matter not its source). Plaintiff has not identified a single instance where Defendants explicitly misled anyone into thinking that Plaintiff was associated the Album. Accordingly, Defendants have satisfied the second prong of *Rogers*.

## III.     **THE GOODS ARE ENTITLED TO FIRST AMENDMENT PROTECTION.**

### A.      *Facenda* **Does Not Preclude Application of** *Rogers* **to the Goods**

The First Amendment's protections for titles of artistic works extends to consumer goods that are auxiliary to that work, and given the facts of this case, the *Empire* decision is the appropriate authority to apply. *See Twentieth Century Fox Television a division of Twentieth*

---

[7] This line of cases refutes Plaintiff's supposition at pages 19-20 of its opposition memorandum, that consumers would expect an album titled *Epic Records* to have been produced by the record label Epic Records.

*Century Fox Film Corp.*, 875 F.3d at 1196.  In *Empire,* the Ninth Circuit found that Twentieth Century Fox ("Fox") did not infringe on the record label Empire Distribution's trademark where Fox had created a television series titled *Empire* and promoted it by releasing soundtrack albums and licensing other consumer goods such as shirts and champagne glasses.  *Id.* at 1195.  In finding that Fox's advertising efforts were protected, the court reasoned that "the balance of First Amendment interests struck in *Rogers* and *Mattel* could be de-stabilized if the titles of expressive works were protected but could not be used to promote these works."  *Id.* at 1197.  This conclusion was consistent with *Rogers*, where the Lanham Act cause of action "was directed against the Film and its  advertising."  875 F.2d at 1005 (Griesa, J., concurring in the judgment); *see also id.* ("In her submissions on the summary judgment motion, *Rogers* focused mainly on the alleged wrongdoing of defendants in entitling the Film and in promoting and advertising the Film.").  Yet the *Rogers* majority decision did distinguish between the film and the promotion of it, holding that Rogers' entire claim was precluded.  *Id.* at 999-1001.  This is no surprise; the *Rogers* test assumes that artists will promote their work and protects such efforts so long as they are not "explicitly misleading."  *See, e.g., Brown*, 724 F.3d at 1246-47 (analyzing promotional efforts under "explicitly misleading" prong of Rogers).

Plaintiff insists that *Facenda v. NFL Films, Inc.,* 542 F.3d 1007, 1024 (3d Cir. 2008) precludes application *Empire* (and implicitly *Rogers* ) to the Goods.  However, *Facenda's* facts are fundamentally distinguishable from this case.  The *Facenda* court found that the production "The Making of Madden NFL 06" was commercial speech that was not entitled to First Amendment protection because the defendant created it in order to promote a football video game, "Madden NFL 06."  *Id.* at 1011.  While the allegedly offending production used the voice of broadcasting legend John Facenda (which was deemed to be an unregistered trademark), the rights

to which belonged to his estate, his voice was never used in Madden NFL 06. *Id.* The use of Facenda's voice was therefore not artistically relevant to the video game that "The Making of Madden NFL 06" was promoting. It was a naked use of his voice to promote a product that had nothing to do with his voice and thus to which his voice had no artistic relevance. In contrast, the use of "high off life" on the Goods derives directly from the expressive use of that phrase as the Album's title. The Goods only exist and bear the words "high off life" because they are an extension of the use of "high off life" as the Album's title. Use of "high off life" on the Goods is, therefore, artistically relevant to the Album they are promoting, the title of which is artistically relevant to it content. This set of facts is analogous to those in *Empire* and vastly different than those in *Facenda.*

Notably, and contrary to Plaintiff's suggestion, the *Facenda* court did not rule out application of *Rogers* under the appropriate set of facts. The court noted that it does "err on the side of fully protecting speech when confronted with works near the line dividing commercial and noncommercial speech," but the work at issue was not "close to that boundary." *Facenda*, 542 F.3d at 1018. The subject work in *Facenda* was promoting an entirely different creative work that had nothing to do with the trademark at issue. *Id.* Only because of this "additional degree of separation" did the court determine that application of *Rogers* was not appropriate. In contrast, the facts here align with those in *Empire* and are appropriate for consideration under *Rogers*. Thus, the court can apply *Empire* to an analysis of the Goods without running afoul of *Facenda.*

**B.      Use of "High Off Life" on the Goods Does Not Indicate Source.**

Plaintiff has not alleged any facts from which it is plausible to conclude that consumers have been explicitly misled as to the source of the Goods. Plaintiff alleged that Freebandz sold the Goods on its websites and through its Instagram shop. (Comp. at ¶ 26.) Plaintiff has not – and

cannot – allege that the Goods were sold anywhere besides Freebandz's websites or that it was advertised anywhere besides Freebandz's Instagram page, @shopfbg.  A customer could only have purchased the Goods from Freebandz, making it unlikely that the customer would think that Plaintiff was associated with them.  The Goods also had clothing tags that bore either Freebandz's or @shopfbg's logo, indicating that it was a Freebranz product.  And, as Plaintiff points out, the Goods were relatively expensive.  (Dkt. 21 at 8.)  "When goods are expensive, buyers can be expected to exercise greater care in their purchases, and therefore confusion as to the source of the goods is less likely to occur."  *Abercrombie & Fitch Co. v. Moose Creek, Inc*., No. CV 06-6245 AHM (SSX), 2007 WL 4973852, at *12 (C.D. Cal. Aug. 17, 2007) (citation & quotations omitted).  Under these facts, it is unlikely that consumers would be misled as to the source of the Goods.

Despite Plaintiff's contentions, the Court may consider the images showing that the Goods bear internal Freebandz labeling.  *Ickes v. Flanagan*, No. 07-143J, 2008 WL 859183, at *1 (W.D. Pa. Mar. 31, 2008) (determining that the Court may review "undisputably authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citation & quotations omitted).  Here, Plaintiff refers to and relies on the Goods' appearance in its Complaint.  *See, e.g.,* Comp. at ¶ 27.  By providing additional images of the Goods, Defendants are "merely complet[ing] the picture" so the Court has an accurate sense of how the Goods actually appear.  *Epps v. Harper*, No. CV 16-135, 2017 WL 1355343, at *4, n.3 (W.D. Pa. Apr. 13, 2017) (permitting the defendants to introduce a more complete set of the plaintiff's medical records where the plaintiff relied on them in his complaint but attached only a portion of them).  Since Plaintiff does not and cannot dispute that the pictures are of the labels in the clothing displayed in its Complaint, the Court may take them into account in deciding this motion.

IV.    **THE COURT MAY CONSIDER DEFENDANTS' FIRST
       <u>AMENDMENT DEFENSE AT THE MOTION TO DISMISS STAGE.</u>**

The Court may consider Defendants' First Amendment defense at this stage of litigation and dismiss the Plaintiff's claims accordingly. Plaintiff's reliance on *Cornette v. Graver*, No. 3:19-CV-219, 2020 WL 1643370, at *7 (W.D. Pa. Apr. 2, 2020) is misplaced. Contrary to Plaintiff's assertions, *Cornette* does not support the proposition that courts cannot consider First Amendment defenses for Lanham Act claims on a motion to dismiss. Rather, the court limited its ruling to the category of the expressive work before it, which was a parody. *Id.* Specifically, the court found that, based on the insufficient factual record before it, it could not evaluate whether the defendant's shirts were a parody protected by the defendant's general First Amendment defense. *Id.* The court reasoned that "whether a particular item is parody, the transformation of something or someone well-known for the purpose of 'satirizing, ridiculing, or commenting on' it, is not a determination that is well suited for a motion to dismiss." *Id.* The opinion did not mention the *Rogers* test. Here, neither the Album nor the Goods are parodies and there is no contention otherwise. (*See* Dkt. 21at 16.) Thus, *Cornette* does not prevent the Court from considering the First Amendment defense.

Second, Plaintiff ignores the fact that numerous courts have granted motions to dismiss Lanham Act claims where they found that the expressive work was protected by *Rogers*. *See, e.g., Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 924 (N.D. Ind. 2013) (defendant's "The Dark Knight Rises" motion picture film did not infringe upon plaintiff's trademark because the term "clean slate" referred to a fictional software product and dismissing the plaintiff's Complaint), *aff'd*, 763 F.3d 696 (7th Cir. 2014); *Medina*, 2016 WL 3906714, at *6 (the music video titled "Loisaidas" did not infringe plaintiff's trademark); *Eastland Music*, 2012 WL 2953188, at *3 (applying Rogers and dismissing infringement claims based on contention that the film title "50/50" infringed plaintiff's trademark PHIFTY-50), *aff'd*, 707 F.3d 869 (7th Cir.

2013); *Rebellion Devs. Ltd.*, 2013 WL 1944888, at *5 (dismissing trademark infringement claims against video game title, holding title "Rebellion" had some artistic relevance because players could choose to align with "loyalist" or "rebel" factions in the context of a civil war); *Woodard*, 2004 WL 771244, at *7 (dismissing trademark infringement claims and holding the challenged portion of the title, "Ripples and Waves," had the requisite degree of artistic relevance to the album). This includes a court in this circuit, the Eastern District of Pennsylvania in *Hidden City Philadelphia*, 2019 WL 1003637, at *5. Plaintiff incorrectly asserts that the Eastern District of Pennsylvania's conclusion that the *Rogers* test barred Hidden City's claim was *dicta*. (Dkt. 21 at 5 n.1.) However, the *Hidden City* court explicitly stated in its conclusion: "Hidden City's trademark infringement claim fails because its trademark is not registered in Pennsylvania. This claim fails for the additional reason that it is barred by the First Amendment as is Hidden City's trademark dilution claim." *Hidden City Phil.*, 2019 WL 1003637, at *5 (emphasis added).

## V.      PLAINTIFF SHOULD BE DENIED LEAVE TO AMEND ITS COMPLAINT.

The Court should not permit Plaintiff to amend its Complaint because all of its claims are deficient as a matter of law and there are no additional facts that could be plead to cure its deficiencies. *See Nicassio v. Viacom Int'l, Inc.,* 309 F. Supp. 3d 381, 399 (W.D. Pa. 2018), *aff'd*, 776 F. App'x 761 (3d Cir. 2019) (stating that the Court can deny requests for leave to amend as futile if "the Complaint, as amended, would fail to state a claim.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an Order dismissing Plaintiff's Complaint in its entirety, with prejudice, and provide such other and further relief as the Court deems just and proper, including without limitation, an award of attorneys' fees and costs.

No. 2:20-cv-1556-WSH

Respectfully submitted,
**THE WEBB LAW FIRM**

Dated: January 27, 2021

s/ *Cecilia R. Dickson*
Cecilia R. Dickson (PA ID No. 89348)
Kent E. Baldauf, Jr. (PA ID No. 70793)
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
cdickson@webblaw.com
kbaldaufjr@webblaw.com

David C. Rose (admitted *pro hac vice*)
Dyan Finguerra-DuCharme (admitted *pro hac vice*)
Pryor Cashman LLP
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
drose@pryorcashman.com
dfinguerra-ducharme@pryorcashman.com

*Attorneys for Defendants Freebandz Productions, LLC and Sony Music Entertainment*

No. 2:20-cv-1556-WSH

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 27th day of January, 2021, I electronically filed the foregoing **REPLY MEMORANDUM OF DEFENDANTS FREEBANDZ PRODUCTIONS, LLC AND SONY MUSIC ENTERTAINMENT IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

**THE WEBB LAW FIRM**

s/ *Cecilia R. Dickson*
Cecilia R. Dickson