IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIGH OFF LIFE, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 20-1556 |
| FREEBANDZ PRODUCTIONS, LLC and SONY MUSIC HOLDINGS, INC., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

I.  **INTRODUCTION**

Plaintiff High Off Life, LLC ("HOL") alleges federal trademark infringement and unfair competition claims, in violation of 15 U.S.C. §§ 1114 and 1125(a), against Defendants Freebandz Productions, LLC ("Freebandz") and Sony Music Holdings, Inc. ("Sony")[1] (together, "Defendants"). (*See* Docket No. 1, ¶¶ 37-47). Plaintiff also asserts common law trademark infringement and unfair competition claims against Defendants. (*See id.*, ¶¶ 48-52). Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), which is opposed by Plaintiff. (Docket Nos. 19-22). After careful consideration of the parties' arguments in light of the prevailing legal standards, Defendants' Motion will be denied.

II.  **BACKGROUND**

As alleged in the Complaint, HOL has "deep roots" in the hip-hop community, particularly in Pennsylvania and the Atlanta area. (Docket No. 1, ¶ 1). In 2004, HOL's

---

[1]  Defendant Sony Music Entertainment is incorrectly identified as Sony Music Holdings, Inc. in the Complaint. (*See* Docket No. 19 at 1).

founder, Zach Richards, began using the mark "High Off Life" relative to his music business to emphasize his focus on more positive, conscious subject matter. (*Id.*, ¶ 1). Beginning in 2009, HOL began manufacturing and selling HIGH OFF LIFE branded apparel and merchandise, and it owns the domain www.highofflife.com, where it sells those items. (*Id.*, ¶ 2). Since 2009, Richards and his associates have worn and advertised clothing bearing HIGH OFF LIFE marks at concerts and other events, and Richards and HOL have held events under the HIGH OFF LIFE brand. (*Id.*, ¶¶ 2, 3). In 2017, Richards started a creative agency under the HIGH OFF LIFE brand, from which HOL has produced hip-hop related content, including shooting music videos and managing projects and advertising for hip-hop artists and brands. (*Id.*, ¶ 3). HOL also is known for producing a hip-hop focused commentary and freestyle rap show called "High Off Life TV," which streams on YouTube. (*Id.*, ¶ 4).

HOL avers that it owns the following three federal trademark registrations issued by the United States Patent and Trademark Office: (1) Reg. No. 5,569,671, issued on September 25, 2018, for the word mark HIGH OFF LIFE ENTERTAINMENT in International Class 41 for "Entertainment services in the nature of recording, production and post-production services in the field of music;" (2) Reg. No. 5,690,553, issued on March 5, 2019, for the HIGH OFF LIFE mark in International Class 25 for "Shirts; . . . T-shirts; Athletic apparel . . . Graphic T-shirts; . . . wearable garments and clothing . . .;" and (3) Reg. No. 5,690,565, issued on March 5, 2019, for the HIGH OFF LIFE mark in International Class 35 for "Advertisement for others on the Internet . . . ." (collectively, "HOL's Registered Marks") (Docket No. 1, ¶¶ 19-21). HOL alleges that it has been using its HIGH OFF LIFE marks in relation to hip-hop music, clothing, events promotion, and branding and advertising since early 2009, it has invested significant money and time into building consumer recognition of its HIGH OFF LIFE brands in those areas, and thus it

has acquired common law rights to HIGH OFF LIFE marks.  (*Id.*, ¶ 22).

According to the Complaint, Freebandz is owned by the rapper Future, and both are based in Atlanta, Georgia, where HOL previously operated for nearly 10 years.  (Docket No. 1, ¶¶ 5, 14, 23).  HOL claims that associates of Freebandz and Future know of HOL's founder, Richards, and his long-time use of HIGH OFF LIFE marks to identify his hip-hop related music and business ventures.  (*Id.*, ¶¶ 8, 23, 33).  Nonetheless, Defendants allegedly knowingly copied HOL's marks in the release of Future's album titled "High Off Life" on or about May 15, 2020 (the "Album").[2]  (*Id.*, ¶ 5).  HOL alleges that the Album originally was titled "Life is Good," but the title was changed to "High Off Life" at the last minute due to concern about coronavirus-related negative press.  (*Id.*, ¶¶ 6, 25).  HOL asserts that the replacement title "High Off Life" bears no relation to the expressive content of the Album.  (*Id.*, ¶¶ 7, 26).

In addition to the Album, Freebandz began marketing and selling "High Off Life" branded apparel and merchandise bearing marks that HOL claims are confusingly similar to HOL's Registered Marks and its common law HIGH OFF LIFE marks ("the Alleged Infringing Goods").  (Docket No. 1, ¶¶ 8, 27, 28, 35).  Freebandz allegedly sells the Alleged Infringing Goods on its two websites and through its Instagram "Freebandz Shop."  (*Id.*, ¶ 27, 29).  Defendants also supposedly engaged in a wide-spread advertising campaign for the Album and the Alleged Infringing Goods, focusing on the hip-hop market segment that had been central to HOL's business since 2009.[3]  (*Id.*, ¶ 9).

HOL avers that it used its HIGH OFF LIFE marks extensively and continuously before

---

2    HOL alleges that Sony released the album through its Epic Records label.  (Docket No. 1, ¶ 24).

3    Related thereto, HOL avers that it has lost its placement on search engines such as Google to links associated with Defendants' Album and apparel, thus interested customers are unable to find HOL's website to make purchases, and HOL's goodwill has been damaged.  (Docket No. 1, ¶ 9).

Freebandz and Sony began to produce, market and sell the Album and the Alleged Infringing Goods.  (Docket No. 1, ¶ 34).  HOL claims that the Album and the Alleged Infringing Goods bear marks that are confusingly similar to HOL's Registered Marks and common law marks. (*Id.*, ¶¶ 40, 50).  Consequently, HOL alleges that Defendants' use of the "High Off Life" marks are likely to cause consumer confusion as to whether the Album and the Alleged Infringing Goods originated from, or are affiliated with, HOL.  (*Id.*, ¶¶ 35, 38, 44, 49).  Additionally, HOL claims that it has suffered "significant" reverse confusion, causing consumers to believe that HOL's products and productions are associated with Defendants.  (*Id.*, ¶¶ 9, 35, 39).

All told, HOL alleges that Defendants' actions infringe HOL's Registered Marks, along with its common law rights in the HIGH OFF LIFE brand.  (Docket No. 1, ¶ 10).  On June 12, 2020, HOL sent cease and desist letters to Defendants demanding that they immediately cease their allegedly infringing activities, but Defendant did not respond and subsequently expanded sales of the Alleged Infringing Goods.  (*Id.*, ¶¶ 11, 30).  HOL then initiated this action asserting claims for federal trademark infringement and unfair competition, (Counts One and Two), and common claims for the same (Count Three).  (*See id.*, ¶¶ 37-52).

Defendants have moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff filed a Response opposing Defendants' Motion, and Defendants filed a Reply thereto.  (Docket Nos. 19-22).  The matter is now ripe for disposition.

### III.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and also "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (citation omitted). When analyzing a motion to dismiss, the factual allegations should be separated from allegations that merely recite the legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The well-pleaded facts are accepted as true, but legal conclusions may be disregarded. *Id.* at 210-11. Next, a determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

IV.   **DISCUSSION**

   A.   **Elements of Trademark Infringement and Unfair Competition**

To state a claim for federal trademark infringement and unfair competition, a plaintiff must plausibly allege three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion."[4] *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards."). "[T]he elements of common law trademark infringement under Pennsylvania and federal law are identical," although the state law claim does not require the goods to travel in interstate commerce. *Standard Terry Mills, Inc. v. Shen Mfg. Co.*, 803 F.2d 778, 780 n. 4 (3d Cir. 1986). Given the factual content pled in the Complaint as summarized above, the Court find that HOL

---

4   "A likelihood of confusion exists when 'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.' " *A & H Sportswear*, 237 F.3d at 211 (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992)).

has plausibly alleged these requisite elements to state trademark infringement and unfair competition claims.

In moving to dismiss the Complaint, Defendants argue that HOL's claims fail as a matter of law because the Album's title is protected by the First Amendment. (*See* Docket No. 20 at 16-23). In pressing this argument, Defendants urge the Court to apply the *Rogers* test, which was developed by the Second Circuit Court of Appeals in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). (*See id.* at 17-18). Defendants contend that HOL's federal and state law trademark infringement and unfair competition claims are barred by the First Amendment under *Rogers* because the phrase "High Off Life" is artistically relevant to the Album, and the Album and the Alleged Infringing Goods do not explicitly mislead consumers as to the source or content of the work or the merchandise. (*Id.* at 22-23).

HOL responds that the Motion to Dismiss should be denied because a determination on Defendants' First Amendment defense is premature given that their arguments are fact-based and thus not properly raised at this stage of the proceedings. (Docket No. 21 at 3-5). HOL submits that the record should first be developed factually before the Court determines whether the Album's title is related to its content and whether Defendants' use of HOL's marks on the Album and the Alleged Infringing Goods is explicitly misleading. (*Id.* at 5). Even if the Court were to reach the merits and apply the *Rogers* test, HOL maintains that Defendants' Motion still should be denied under Third Circuit precedent, which bars application of *Rogers* to the Alleged Infringing Goods because they are commercial speech. (*Id.* at 6-8). Even so, HOL contends that sufficient facts are pled in the Complaint as to the Alleged Infringing Goods to support a finding of likelihood of confusion. (*Id.* at 9-10). Further, as to the Album, the *Rogers* test is inapplicable to the Album's title, which uses an identical title in a confusingly similar manner.

(*Id.* at 11-17).  However, even if *Rogers* applies, the title "High Off Life" is not clearly related to the Album's content, and the title is explicitly misleading as to its content.  (*Id.* at 17-20).

In reply, Defendants contend that the Complaint does not state a plausible cause of action because it is insufficient for HOL to simply plead that the Album's title, *High Off Life*, "bears no relation to the expressive content of the album."  (Docket No. 22 at 7-8) (quoting Docket No. 1, ¶ 26)).  Additionally, Defendants reiterate that the Album title is entitled to First Amendment Protection because both prongs of the *Rogers* test are satisfied.  (*Id.* at 9-15).  Defendants further assert that the Alleged Infringing Goods are entitled to First Amendment protection because Third Circuit precedent does not preclude application of *Rogers* to goods.  (*Id.* at 15-17).  Further, HOL has not alleged any facts from which it is plausible to conclude that consumers have been explicitly misled as to the source of the Alleged Infringing Goods.  (*Id.* at 17-18).  Finally, Defendants maintain that the Court may consider their First Amendment defense at the motion to dismiss stage.  (*Id.* at 19-20).

### B. The Rogers Test

In *Rogers*, the Second Circuit Court of Appeals established a framework to analyze when the First Amendment provides a defense against a trademark infringement claim where the title of an artistic work is the subject of such a claim.  *See Rogers*, 875 F.2d at 999.  In that case, film star Ginger Rogers claimed that the defendant's film, "Ginger and Fred," created the false impression that she was associated with the film.  *Id.* at 996-97.  The Second Circuit began its analysis by noting that "[m]ovies, plays, books, and songs are all indisputably works of artistic expression and deserve protection."  *Id.* at 997.  As the court observed, "[b]ecause overextension of Lanham Act restrictions in the area of titles might intrude on First Amendment values, we must construe the Act narrowly to avoid such a conflict."  *Id.* at 998.  However, the

court also recognized that artistic works may be used to deceive consumers because they are made available in the commercial marketplace. *Id.* at 997. The court held that "in general the [Lanham] Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id.* at 999. Under the test developed by the Second Circuit in *Rogers*, the proper balance between trademark law and free expression "will normally not support application of the [Lanham] Act unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Id.* In summary, under the *Rogers* test, a title will be protected unless it has "no artistic relevance" to the underlying work or, if there is artistic relevance, the title "explicitly misleads as to the source or the content of the work." *Id.*

While a number of Courts of Appeals have adopted the *Rogers* test,[5] the Third Circuit Court of Appeals has not yet done so. *See Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 157 (3d Cir. 2013) ("[W]e thus remain skeptical that the *Rogers* Test applies to the general contents of a work when analyzing right of publicity claims."); *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1018 (3d Cir. 2008) (declining to apply *Rogers* to use of a narrator's voice in a television production). In declining to adopt the *Rogers* test, the *Facenda* Court expressed doubt whether it could apply beyond the title of a work of artistic expression. *See Facenda*, 542 F.3d at 1018.

---

5   The Fifth, Sixth, Ninth and Eleventh Circuit Courts of Appeals have adopted the *Rogers* analysis. *See University of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012); *Parks v. LaFace Records*, 329 F.3d 437, 451-52 (6th Cir. 2003); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 & n. 7 (5th Cir. 1999).

C. **<u>Defendants' First Amendment Argument is Premature</u>**

Although Defendants cite various cases in which a court granted a motion to dismiss Lanham Act claims by applying *Rogers*, (*see* Docket No. 22 at 19-20),[6] as one court has observed, "consideration of the *Rogers* defense on a motion to dismiss appears to be the exception, not the rule." *Sapieyevski v. Live Nation Worldwide, Inc.*, Civ. No. 18-830, 2019 WL 1284302, at *4 (D.D.C. Mar. 20, 2019). In this instance, even if the Court were to accept Defendants' invitation to apply the *Rogers* framework as a valid defense to HOL's claims, the Court concludes that a motion to dismiss is not the appropriate stage in this litigation to address the applicability of the First Amendment defense. *See e.g., Cornette v. Graver*, No. 3:19-cv-219, 2020 WL 1643370, at *7 (W.D. Pa. Apr. 2, 2020)[7] (whether a violation of the Lanham Act has occurred is a question that is "predominantly factual in nature," thus a motion to dismiss is not the appropriate stage at which to resolve a defendant's argument that the First Amendment shields it from Lanham Act liability) (quoting *Facenda*, 542 F.3d at 1024). In reaching this conclusion, the Court does not definitively hold that Defendants are not entitled to First Amendment protection under the *Rogers* test. Instead, the Court finds that the analysis of whether the First Amendment protects Defendants' actions is more appropriately conducted at the summary judgment stage after development and presentation of a factual record.

---

6   This includes a court in the Eastern District of Pennsylvania in *Hidden City Philadelphia v. ABC, Inc.*, Civ. No. 18-65, 2019 WL 1003637 (E.D. Pa. Mar. 1, 2019), wherein the court acknowledged that the Third Circuit has declined to adopt *Rogers*, (*id.* at *3, n. 6), but applied the test in dismissing claims on a Rule 12(b)(6) motion based on the record presented in that case. (*Id.* at *4-*5).

7   Defendants maintain that *Cornette* is inapposite because at issue there was whether the defendant's shirts were a parody protected by the First Amendment, which the court observed was "not a determination that is well suited for a motion to dismiss," and the opinion did not mention the *Rogers* test. (Docket No. 22 at 19) (quoting *Cornette*, 2020 WL 1643370, at *7)). Despite these distinctions, the Court finds *Cornette* instructive for the general proposition that whether a Lanham Act violation has occurred is a question that is predominantly factual in nature, which is better resolved after development and presentation of a factual record. *Cornette*, 2020 WL 1643370, at *7.

Although the Court expresses no opinion on the merits of Defendants' First Amendment defense, the Court briefly highlights two points to illustrate that this is not the appropriate stage in the litigation to address that defense. First, as explained in *Rogers*, "[m]ovies, plays, books, and songs are all indisputably works of artistic expression and deserve protection." *Rogers*, 875 F.2d at 997. As such, while the Album would appear to qualify as a work of artistic expression subject to the *Rogers* framework, it is unclear whether *Rogers* is applicable to the Alleged Infringing Goods, particularly given that the Third Circuit Court of Appeals has expressed doubt as to its applicability beyond the title of a work of artistic expression.[8] *See Facenda*, 542 F.3d at 1018. Accordingly, further factual development of the record relative to the nature of the Alleged Infringing Goods will aid in ultimately resolving this issue.

By way of further example, with respect to *Rogers*' first prong as applied to the Album, the Court is cognizant that whether the title is artistically relevant to the underlying work is a "low threshold of minimal artistic relevance," which is met as long as the title of the work is "not arbitrarily chosen just to exploit the publicity value of" a plaintiff's trademark. *Rogers*, 875 F.2d at 999, 1001. Despite this low threshold, additional factual development is necessary in order to make the artistic relevance determination in this case. On one hand, HOL alleges that the Album's original title, which was "Life is Good," was changed to "High Off Life" at the last minute due to concern about coronavirus-related negative press, and the title "High Off Life"

---

[8]  Defendants submit that "goods that bear an album title, and that were created and marketed specifically to promote an album, should be included in a court's assessment of whether the underlying artistic expression is protected by *Rogers*." (Docket No. 20 at 18). In support, Defendants cite *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017) for the proposition that, "[a]lthough it is true that these promotional efforts technically fall outside the title or body of an expressive work, it requires only a minor logical extension of the reasoning of *Rogers* to hold that works protected under its test may be advertised and marketed by name, and we so hold." Despite the Ninth Circuit's holding, to reiterate, the Third Circuit Court of Appeals in *Facenda* expressed doubt as to *Rogers*' applicability beyond the title of a work of artistic expression. *See Facenda*, 542 F.3d at 1018.

bears no relation to the expressive content of the Album. (Docket No. 1, ¶¶ 25, 26). On the other hand, Defendants contend in their briefing that the Album is a collection of songs about life and its joys, "High Off Life" was not arbitrarily chosen as the Album's title, Future supposedly chose "High Off Life" as a substitute title because of its artistic relevance to the expressive content of the Album, and the Album is a product of Future reflecting on his life and recognizing his good fortune, which is apparent from the Album's song titles alone. (Docket No. 20 at 6, 19, 20). Despite Defendants' assertions, at this stage, the Court has no evidence concerning Future's intent in choosing the Album's title or that the Album is a product of Future's reflection on his life and recognition of his good fortune. Contrary to Defendants' suggestion, it is not readily apparent from the song titles Defendants cite (*Touch the Sky, Hard to Choose One, Trillionaire, Too Comfortable, Accepting My Flaws* and *Life is Good*),[9] (*see* Docket No. 20 at 19), that the Album title "High Off Life" is artistically relevant to the content of the Album.[10,11]

---

[9]  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Here, HOL's Complaint refers to the songs on the Album. (*See* Docket No. 1, ¶ 26) (alleging that "[t]he album title 'High Off Life' bears no relation to the expressive content of the album")). The parties do not dispute that the Court may consider the song titles in ruling on the Motion to Dismiss. (*See* Docket Nos. 20 at 8, n.1, 15; 21 at 16, n.3).

[10]  The Album title "High Off Life" and the song titles cited by Defendants differ from those at issue in *Caiz v. Roberts*, 382 F. Supp. 3d 942, 945 (C.D. Cal. 2019), wherein the plaintiff alleged that the defendants infringed on his federal trademark for "Mastermind" by releasing a hip-hop album entitled "Mastermind." The *Caiz* court determined at summary judgment that the album title "Mastermind" had artistic relevance to the underlying work for purposes of the first prong of *Rogers*, where six of nineteen songs on the album made direct use of "mastermind" in the lyrics, one song directly referenced the overall album itself by its title, linking the title to the contents, and the defendants provided evidence of the use of the term "mastermind" as part of a larger, abstract theme used by hip-hop artists claiming to be masterminds of music. (*Id.* at 949-50).

[11]  For similar reasons, even if the *Rogers* test can be applied to the Alleged Infringing Goods, it is premature to determine without further factual development whether "[u]se of 'high off life' on the Goods is . . . artistically relevant to the Album they are promoting, the title of which is artistically relevant to its content" as Defendants assert. (*See* Docket No. 22 at 17; *see also* Docket No. 20 at 20 (asserting that the designs on the Alleged Infringing goods "were intentionally chosen because they conformed to the Album's expressive theme")).

Rather, Defendants' arguments are factual contentions that must be balanced against HOL's allegations, and therefore are better addressed at the summary judgment stage.

## V.     CONCLUSION

Given that further development of a factual record is necessary before conducting an in-depth analysis of Defendants' First Amendment defense, the Court declines to further consider Defendants' First Amendment arguments at this stage of the proceedings. Accordingly, Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), (Docket No. 19), is denied.

An appropriate order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:   March 30, 2022

cc/ecf:  All counsel of record